In the Matter of ALBERT OTTINGER, as Attorney-General
of the State of New York, et al., Respondents, for a
Peremptory Order of Mandamus against THE STATE
CIVIL SERVICE COMMISSION et al., Appellants.

Constitutional law — civil service — statute authorizing
State official in his discretion and without civil service examina-
tion to appoint such deputies, officers and assistants as he
deems necessary unconstitutional — limit of legislative power
to provide for enforcement of civil service provision of Consti-
tution — confidential positions — mandamus to compel Civil
Service Commission to certify payrolls denied.

1. Section 359-a of the General Business Law which provides that
" the Attorney-General may in his discretion, and without civil service
examination, appoint and employ, and at his pleasure remove, such
deputies, officers and other persons as he deems necessary," to aid in
the enforcement of article 23-A of that law, offends against section
9 of article 5 of the State Constitution which provides that "Appoint-
ments and promotions in the civil service of the state  *   *   *   shall
be made according to merit and fitness to be ascertained, so far as
practicable, by examination, which, so far as practicable, shall be
competitive."

2. While the Legislature retains the power of selection among means
appropriate to enforce the constitutional provision and may even
classify positions itself, a statute which declares in advance of the
event that any and all positions now or at any time established in
connection with a bureau of government shall be withdrawn from the
jurisdiction of the Civil Service Commission and filled without exam-
ination of any kind, does not enforce the Constitution to the limit of
the practicable.    The attempted exemption, therefore, fails, and there
must be recourse to the tests and standards established by existing
laws.

3. Nor is this affected by the fact that positions in the bureau are
highly confidential.   The confidential character of a position is a
circumstance to be considered in determining whether examination,
competitive or non-competitive, supplies a practicable test, but it is
a circumstance only, and is not always or inevitably conclusive.
What weight shall be ascribed to it in a given relation is not sus-
ceptible of ascertainment until the relation is known with all its inci-
dents and functions.

4. Where, therefore, the Attorney-General, pursuant to said statute, appointed deputies and assistants without examination by the Civil Service Commission and submitted the payrolls to that Commission, which, declining to give effect to the statutory exemption, proceeded to determine for itself whether the nature of the several positions made the test of examination appropriate or futile and took the ground that it would not classify certain positions as exempt till it had further information as to the nature of the duties, an application by the Attorney-General for an order of mandamus directing the Commission to certify that the appointments had been made in pursuance of law should be denied.

*Matter of Ottinger* v. *Civil Service Comn.*, 214 App. Div. ——, reversed.

(Argued June 1, 1925; decided July 15, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 18, 1925, which affirmed an order of Special Term granting a motion for a peremptory order of mandamus· to compel the State Civil Service Commission to certify for payment a payroll of the Attorney-General.

*Robert E. Whalen* and *D-Cady Herrick* for appellants. The question at issue must be answered in the negative. (*Hale* v. *Worstell*, 185 N. Y. 247; *Matter of Simmons* v. *McGuire*, 204 N. Y. 253; *Matter of Keymer*, 148 N. Y. 219; *Matter of Barthelmess* v. *Gukor*, 231 N. Y. 435; *People ex rel. McClelland* v. *Roberts*, 148 N. Y. 360; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Flaherty* v. *Milliken*, 193 N. Y. 564.) To sustain section 359-a of the General Business Law as constitutional, it must be held that the Legislature has power to determine that it is not practicable to ascertain, by examination, the merit and fitness of candidates for official positions, even where such positions and the duties thereof are then wholly unknown to the Legislature, but such official positions are to be created and the duties thereof determined after the enactment of such legislative determination and exemption from the civil service clause of the Constitution. (*Flynn* v. *Prudential Ins. Co.*, 207

N. Y. 315; *People ex rel. Jackson* v. *Potter*, 47 N. Y. 375; *Stuart* v. *Palmer*, 74 N. Y. 183; *Colon* v. *Lisk*, 153 N. Y. 188.)

*Albert De Roode, Samuel H. Ordway* and *H. Eliot Kaplan* for Civil Service Reform Association *amicus curiæ.* If section 359-a permits employment without civil service examination of all employees regardless of whether competition is practicable to fill the positions, then it is unconstitutional. (*Barthelmess* v. *Cukor*, 231 N. Y. 435; *Murray* v. *Kaplan*, 206 App. Div. 202; *Hale* v. *Worstell*, 185 N. Y. 247.)

*Albert Ottinger, Attorney-General* (*C. T. Dawes* of counsel), for respondents. The Legislature is the classifying authority.. Therefore, legislative classifications are primary classifications, classifications made by the department of the government intrusted with the duty of seeing that positions are classified. (*Matter of Long Sault Development Co.*, 212 N. Y. 1, 9; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Simmons* v. *McGuire*, 204 N. Y. 253.) The Legislature knew the nature of the work it was entering upon through the Attorney-General, when it passed the Martin Act, and acted in full obedience to the Constitution when it deemed examinations not practical for the positions, and declared the positions exempt. (*People ex rel. Crane* v. *Taylor*, 17 Misc. Rep. 50; *Fox* v. *Smith*, 123 App. Div. 369; *Lehon* v. *City of Atlanta*, 242 U. S. 53; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Simmons* v. *McGuire*, 204 N. Y. 253; *People ex rel. Crummy* v. *Palmer*, 152 N. Y. 217; *Chittenden* v. *Wurster*, 152 N. Y. 345; *People ex rel. Sweet* v. *Lyman*, 157 N. Y. 368: *Matter of Farley* v. *Kraft*, 204 N. Y. 675; *People ex rel. Merritt* v. *Kraft*, 145 App. Div. 652; 204 N. Y. 626.)

CARDOZO, J. The Attorney-General has appointed assistants and employees to aid in the enforcement of

article 23-A of the General Business Law (Laws of 1921, chap. 649). He takes the ground that under section 359-a of the act, the persons so designated are exempt from the requirement of civil service examination. The State Civil Service Commission contests the validity of the exemption. The conflicting claims of right are brought before us by a proceeding for an order of mandamus directing the Commission to certify that the appointments have been made " in pursuance of law " (Civil Service Law, § 20).

The Legislature in 1921, by the adoption of chapter 649 of the Laws of that year, clothed the Attorney-General with large powers for the prevention and punishment of frauds in the sale or circulation of bonds, stock certificates and other securities. The evil had grown to such dimensions, not only in this State, but elsewhere, that in the effort to correct it a new class of statutes, varying widely in their provisions, but known generically as Blue Sky Laws (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, 550), appeared upon the statute books. This article of the General Business Law is the contribution made by New York to the solution of the problem.

Section 352 empowers the Attorney-General, whenever it appears to him either upon complaint or otherwise that frauds have been committed, to conduct an investigation in person or by deputy. Witnesses, if subpœnaed, must attend before him or before a magistrate or court of record, must answer any questions affecting the suspected business and must produce their books and papers. Any officer or witness participating in the inquiry who discloses to any person other than the Attorney-General the name of any witness examined or any other information obtained upon such inquiry, is guilty of a misdemeanor. Secrecy is essential, not only for the prosecu- tion of the guilty, but also for the protection of the innocent, who might be ruined in business or reputation if the mere fact that they were under investigation were

to become known to the public. When reasonable grounds exist, the Attorney-General may bring an action to enjoin the continuance of the business in which the fraudulent practices prevail (§ 353). In support of such an action and almost upon mere request, he may have an examination before trial of parties or of witnesses (§ 354). He may also initiate criminal prosecutions (§ 358), superseding in that respect the district attorneys of the counties. The discharge of duties so multifarious was seen to involve a need for the creation of a separate bureau to be manned by a proper staff. To that end, the act provides as follows: " § 359-a. Appointment of deputies. For the purposes of this article, the Attorney-General may in his discretion, and without civil service examination, appoint and employ, and at his pleasure remove, such deputies, officers and other persons as he deems necessary, and determine their duties and fix their compensation."

Supplementary legislation, enacted in 1923, amended the act of 1921 in ways not now important, and appropriated the moneys that were needed to enforce it (L. 1923, ch. 600). Upon this, the Attorney-General then in office appointed deputies and assistants, whose salaries, it seems, were paid by the Comptroller, though there had been neither examination by the Civil Service Commission nor submission of the payrolls to the Commission for certification and approval. The present Attorney-General, though agreeing with his predecessor that the persons named upon the payrolls were exempt from examination, held the view that the payrolls themselves should go to the Commission to be certified to the Comptroller (Civil Service Law, §§ 19, 20). Upon making his appointments, nineteen in number, he submitted the payrolls to the Commission, with a notation that the appointments had been made under Laws of 1921, chapter 649, and that examination was not required. The Commission declined to give effect to the statutory exemption,

and proceeded to determine for itself whether the nature of the several positions made the test of examination appropriate or futile. Of the nineteen appointments made, the Commission placed ten within the exempt class, the positions thus included being those of special deputies, deputies and one investigator. The resolution to that effect, approved by the Governor, states that no examination, competitive or non-competitive, is practicable for any of them. The controversy is confined to the remaining nine positions which are described on the payrolls as held by stenographers and clerks. The Commission took the ground that it would not classify these positions as exempt till it had further information as to the nature of the duties. The Attorney-General answered the request for information by the service of affidavits and an order to show cause upon an application for mandamus. We are now to determine whether section 359-a of the General Business Law deprives the Commission of any power of classification in the premises, and imposes a duty, strictly ministerial, to authenticate the payrolls when the appointing officer has acted.

By article V, section 9, of the Constitution of the State, "Appointments and promotions in the civil service of the state * * * shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." If competitive examination is impracticable, there must still be non-competitive examination unless that also is impracticable. "Laws shall be made to provide for the enforcement of this section" (Const. *supra*).

The Legislature in obedience to that command has enacted the Civil Service Law. We have no thought to suggest that with the enactment of that law its power was exhausted. It may adopt some other agency, and even classify for itself, if its classification can reasonably be regarded as a genuine endeavor to extend the constitutional test to the limit of the practicable (*People*

*ex rel. Schau* v. *McWilliams*, 185 N. Y. 92, 99; *Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435, 443). What that limit is, may not be determined as an abstraction, or irrespective of experience. The very fact that there exists and has long existed a commission dealing with exemptions in the setting of the concrete instance, is something not to be ignored when a whole bureau or department is declared exempt in gross. The Legislature retains the power of selection among means appropriate to the end, but choice must rest upon reason, and not upon caprice. To know the limit of the practicable, we must give heed to methods and institutions that are functioning in practice. To mark the frontier of the attainable we must find the line attained.

This statute is not an expression of the legislative judgment that the constitutional test is impracticable for enumerated or described positions with known or determinate duties. Its aim is far more drastic. It authorizes the Attorney-General, not merely to create the positions, but also to define their duties, and declares in advance that, whatever the definition, there shall be exemption from all examination, competitive or noncompetitive. To sustain a privilege so sweeping, the Legislature must have been able to say that neither this Attorney-General nor any other could at any time establish any position having relation to this bureau for which examination of any kind, competitive or noncompetitive, would supply a practicable test of merit or fitness. The question is not whether the particular appointments covered by this payroll might have been placed within the exempt class if the statute had been limited to them. Other positions may be created hereafter either by this Attorney-General or by his successors. The question is whether the exemption will be valid as to one and all.

We think a statute which declares in advance of the event that any and all positions now or at any time

established in connection with this bureau, shall be withdrawn from the jurisdiction of the Civil Service Commission and filled without examination of any kind, does not enforce the Constitution to the limit of the practicable. That being so, the attempted exemption fails, and there must be recourse to the tests and standards established by existing laws (*Matter of Keymer*, 148 N. Y. 219; *Chittenden* v. *Wurster*, 152 N. Y. 345). The existing Civil Service Law divides the civil service into the unclassified service and the classified, and subdivides the latter into the exempt class, the competitive, the labor, and the non-competitive. " The non-competitive class shall include such positions as are not in the exempt class or the labor class and which it is impracticable to include in the competitive class. Appointments to positions in the non-competitive class shall be made after such non-competitive examination as is prescribed by the rules " (Civil Service Law [Cons. Laws, ch. 7], § 17). A position may not consistently with the Constitution be placed in the exempt class if it may practicably be placed in the competitive or non-competitive. The respondent argues that positions in the bureau are highly confidential. Those who fill them, it is said, must have qualities and associations that high ratings upon examinations would be ineffective to disclose. The confidential character of a position is a circumstance to be considered in determining whether examination, competitive or non-competitive, supplies a practicable test, but it is a circumstance only, and is not always or inevitably conclusive (*Simons* v. *McGuire*, 204 N. Y. 253). What weight shall be ascribed to it in a given relation is not susceptible of ascertainment until the relation is known with all its incidents and functions. At least this must be so when even the test of non-competitive examination is excluded as impracticable. A private secretary may be thought to stand in such a relation to an employer that the *delectus personarum* should be subject to no restriction. One would find it

difficult on the other hand to state a reason why a stenographer employed to take the minutes of a hearing or of an examination before trial should be declared exempt from all examination, even non-competitive. Personal likings should then yield to the overmastering need that the statements of witnesses be accurately recorded, since the liberty and the reputation of supposed offenders may depend upon the record. In all this, there is no sacrifice of a large liberty of choice. Non-competitive examination does not restrict the appointing officer to the name highest on the list. He may reject any on the list or all if their personal qualities or associations seem to render them ineligible. Non-competitive examination is merely an assurance that along with personal qualities or associations satisfactory to the appointing officer there shall also be the attainment of some standard of efficiency established as a minimum. We find no reasonable basis for a belief that in all the positions, present or future, that exist or may exist in connection with this bureau, there can be no place for a test of efficiency by any form of examination, even as a supplement to tests more intimate and personal. If the Legislature may so declare as to this bureau for no better reason than the need of secrecy, it may say as much of the employees of the district attorneys in every county in the State. By a slight and yet inevitable extension, it may make a like declaration as to other bureaus and departments. No such sweeping exemption within the limits of the administrative departments of the government has ever been proclaimed since the Constitution set bounds to the discretion of the Legislature in the formation of the civil service.

Our ruling does not go beyond the necessities of the case before us. We do not attempt to say how the positions in controversy shall be classified by the Commission when classification becomes necessary. Very likely many, if not all, will be taken out of the competitive

class, or perhaps exempted altogether. What shall be done with them is indeed a small question if we regard the instance only. We are concerned at this time with the vindication of a principle. The learned Attorney-General followed in good faith the command of a statute and the practice of his office. Statute and practice offend the Constitution, and so we now adjudge.

The order of the Appellate Division and that of the Special Term should be reversed, without costs to either party, and the application for a mandamus denied.

Hiscock, Ch. J., Pound, McLaughlin, Crane, Andrews and Lehman, JJ., concur.

Orders reversed, etc.