In the Matter of the Application of FRANK A. CRAIG, Petitioner, for an Order against THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, New York County, April 10, 1940.

*Herman Hoffman*, for the petitioner.

*William C. Chanler, Corporation Counsel* [*Nicholas Bucci* and *Arthur H. Kahn* of counsel], for the respondent.

*Samuel D. Smoleff*, for the Citizens Union of the City of New York, as *amicus curiæ*.

LEVY, J. This is an application for an order pursuant to article 78 of the Civil Practice Act directing the board of education of the city of New York to obey an order of the State Commissioner

of Education made on the 8th day of December, 1939, to " forthwith appoint Frank A. Craig to the position of Chief Attendance Officer in the Bureau of Compulsory Education, School Census and Child Welfare, said Craig having been duly nominated by the Board of Superintendents pursuant to the provisions of statute."

The facts which led to the order of the Commissioner are quite fully stated in his opinion annexed to the petition. They show the following circumstances: The petitioner became an attendance officer in 1914, a district supervising attendance officer in 1919, and a division supervising attendance officer in 1929. In March, 1936, the office of chief attendance officer in the bureau of compulsory education became vacant. He was assigned as acting chief attendance officer until the vacancy should be filled, and has since acted in that capacity. The board of superintendents nominated him in 1938 to the position of chief attendance officer under section 871-a of the Education Law, which provides: " In a city having a population of one million or more there shall be a bureau of compulsory education, school census and child welfare. Said bureau shall consist of a director, an assistant director, a chief attendance officer, division supervising attendance officers and such other supervisors, attendance officers, enumerators, clerks and other employees as may be necessary to carry out the provisions * * * of the Education Law * * *. Appointments of attendance officers and district supervising attendance officers shall be made from eligible lists prepared in the same manner and by the same authority as are eligible lists for teachers. Appointments to all other administrative and supervisory offices and positions of higher grade in such bureau except in the clerical staff shall be made upon the nomination of the board of superintendents from the incumbents of supervisory positions of lower grade."

Section 871 imposes the duty upon the board of examiners of the board of education to examine all applicants whose appointment is made from eligible lists. Accordingly, it is clear that attendance officers and district supervising attendance officers are to be appointed from eligible lists prepared by the board of examiners. That restriction, however, is not placed upon the appointment of other administrative and supervisory officers, of which the chief attendance officer is one. The only requirements, as interpreted by the Commissioner of Education, is that such appointment by the board of education shall be made upon the nomination of the board of superintendents from among the incumbents of the supervisory positions of lower grades. While the board of superintendents is free to select its nominee, provided he is from this group, the board of education must appoint the person

so nominated. The Commissioner disapproved the contention that the latter board may arbitrarily reject such nomination, holding that it could not refuse to appoint the nominee, unless the action of the board of superintendents in making its selection was arbitrary or capricious. No such claim was made here. While he considered it proper for the board of superintendents to fill the position from a promotion eligible list prepared by the board of examiners after a competitive examination of the personnel in the lower grades of the bureau, it was not bound to follow this procedure. What the board of superintendents actually did was to consult the board of examiners, who conducted what might be termed " a noncompetitive examination " and certified two names to that board, the petitioner's name being first on such list. Thereupon his name was presented to the board of education.

It further appears from the opinion that the refusal of the latter board to appoint petitioner after his original nomination in 1938, was due to its belief that the position was unnecessary. A bill introduced in the Legislature to abolish it did not receive favorable consideration. On December 22, 1938, the Commissioner, upon appeal by the present petitioner, after pointing out that the position was statutory and must be filled, directed the board to do so. Thereafter the board of superintendents renominated the petitioner, and again the board of education postponed action pending the fate of a bill introduced in the 1939 Legislature to abolish the position. That bill again failed of passage.

It was after this second nomination that petitioner made his new appeal to the Commissioner of Education, from whose opinion in favor of the petitioner these undisputed facts are taken. The board of education, having again failed to make the appointment as directed by the Commissioner, this application for a mandatory order has been made.

Numerous defenses are interposed including the pleas that the position is unnecessary, that there is financial inability by reason of lack of appropriation, that the board of education could not be compelled to accept the nominee of the board of superintendents, that this application is addressed to the discretion of the court, and that it would be unconstitutional to fill the vacancy except by a competitive promotion examination. The last defense is supported by opinions of a member of the board of examiners, of the superintendent of schools, and of the director of the attendance divisions that it was practicable to determine the merit and fitness of candidates by competitive examination.

The defenses need not be considered separately, except the one last mentioned. The remaining defenses rest upon the recognition

which the courts should give to a determination of an appeal to the Commissioner of Education under section 890 of the Education Law.

Respondent argues that the right to an order directing the performance of duty which takes the place of the old writ and former order of mandamus, is discretionary and should be denied on that ground. It cites *Matter of Coombs* v. *Edwards* (280 N. Y. 361) and *Matter of Black* v. *O'Brien* (264 id. 272) in support of this position, quoting from the former case to the effect that even where a petitioner presents an issue for the enforcement of a clear legal right, the court may determine whether in the exercise of a sound discretion, it should grant or withhold the order.

This view undoubtedly is intended pre-eminently to apply to those cases where an alternative remedy exists, even though not quite so adequate. Where, however, such an order is the sole remedy, which may give the petitioner any relief, the rule of discretion should not be blindly followed.

Here petitioner seeks to compel the board of education to appoint him to a position by carrying into effect the direction or mandate of the State Commissioner. This is the only method by which he may obtain relief. The other means suggested in the answer, namely, the exercise of powers possessed by that official to enforce his order by withholding school funds or removing officers who disobey it, would be a tragic travesty, visiting punishment upon the school system itself and the persons with whose education it is charged. The right to the order demanded in this court must, therefore, be examined in the light of substantive law and without evasion or subterfuge.

The main question, apart from the consideration of the propriety of the procedure, is the character and effect of the decision by the Commissioner of Education. Is it an administrative or judicial act? Is it reviewable by the courts? To what extent may it be questioned in other litigation involving the same parties and subject-matter? The basic answer is found in the provisions of section 890 of the Education Law, which provides for a method of appeal to the Commissioner of Education, in the following language:

" Any person conceiving himself aggrieved may appeal or petition to the Commissioner of Education who is hereby authorized and required to examine and decide the same; and the Commissioner of Education may also institute such proceedings as are authorized under this act and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action: * * *

" 7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools."

The language of the statute clearly shows that the Commissioner's determination under that section is of a judicial character and must be respected as such. Perhaps his power on appeals is even broader than that of the courts in that he also may pass in review upon questions of educational policy so far as it affects the welfare of the school system.

I gave expression to this thought in *Matter of Brady* v. *Bd. of Education* (136 Misc. 1; affd., 229 App. Div. 853). In that case teachers of the junior high school grades in the city of New York, whose salary schedule was lower than that established for regular high schools, claimed a right to the same salary, on the ground that there was no difference in the character of the work of those schools. They sought mandamus to accomplish this result.

In denying the application, I nevertheless indicated that a direction " to compel the exercise of a proper discretion on the part of the board of education, after a possible basic determination that there has been an abuse of such discretion, is essentially within the province of the judicial power of the State Commissioner of Education, pursuant to section 890 of the Education Law. In *Matter of Louderback* (32 State Dept. Rep. 588) the petitioner took recourse to such an appeal in order to establish that a ' visiting teacher ' under the salary schedules adopted pursuant to section 883 of the Education Law, was entitled, by reason of her qualifications and the principle underlying the law, to the same salary as a ' special teacher.' In *Louderback* v. *Board of Education* (216 App. Div. 805; affd., 244 N. Y. 511) the ruling of the Commissioner of Education was adopted as *res adjudicata*. (See, also, *Caldwell* v. *Board of Education*, 127 Misc. 492.) * * * If any one should review the discretion of the board of education, it is the State Commissioner, whom the Education Law, by reason of his educational perspective of school organization and his broad professional attainments, has recognized as eminently fitted to perform a task of this nature."

The principle underlying these views is fully supported by the utterances in *Barringer* v. *Powell* (230 N. Y. 37). There a teacher, feeling herself aggrieved because of the failure of a school district which had annexed another one to honor the obligations incurred by the original district under a contract with her, appealed to the Commissioner of Education. He ruled in her favor. Thereafter, she brought an action in the Supreme Court for damages, relying upon the determination by the Commissioner as fixing her right to compensation for breach of contract. The Court of Appeals made

the following interesting observations, which may well be quoted at length on both the legal effect of such a determination and the remedy of the prevailing party subsequent thereto: " The plaintiff conceived herself aggrieved by the action of the trustees of district No. 3. They refused to recognize the obligations of her contract made by district No. 8 prior to the consolidation. She thereupon had an absolute right to appeal to the Commissioner of Education and have him determine whether or not her contract was binding upon the substituted district. He having jurisdiction, the decision rendered by him was conclusive. Both the appellant and respondents were agents of the education department for the purpose of conducting the State's system of education under the provisions of the Education Law. (*People ex rel. Hylan* v. *Finegan*, 227 N. Y. 219.) It has frequently been held, under such circumstances, that the statute confers upon the Commissioner of Education power to review, on the petition of a person aggrieved, any decision mentioned in the Education Law. (*Welker* v. *Lathrop*, 210 N. Y. 434; *People ex rel. Board of Education of the City of New York* v. *Finley*, 211 N. Y. 51; *People ex rel. Peixotto* v. *Board of Education of the City of New York*, 212 N. Y. 463.) The purpose of the statute, obviously, was to place upon the Commissioner the supervision and control of the public school system and in the matters committed to his charge to make his decision final. (*Bullock* v. *Cooley*, 225 N. Y. 566.)"

In the *Caldwell* case (*supra*) the Appellate Term considered appeals from summary judgments against the board of education of the city of New York in actions brought to recover the differences between the salary which plaintiffs as visiting teachers were paid, and that to which they claimed to be entitled as teachers of special subjects. Expressing the court's unanimous view upholding plaintiffs' contentions, I said: " The board disputed the right of visiting teachers to be classed as special teachers under schedule 1-C and the matter having been carried to the State Commissioner of Education his determination that they came under such classification was *res adjudicata*. In an action brought in the Supreme Court to recover back pay for the period prior to the filing of the Commissioner's decision, the board of education brought up the precise question which had been subsequently disposed of by him, and was again defeated, and the Appellate Division has sustained the Special Term."

The reference there, as well as in the *Brady* case (*supra*), to an action in the Supreme Court, subsequent to the decision by the Commissioner, was to *Louderback* v. *Board of Education* (*supra*), in which no opinion was handed down. Nevertheless, from the

briefs it may be clearly inferred that in the construction of the statute the court regarded the determination of the Commissioner as *res adjudicata.* It is interesting to note that after holding, in effect, that his determination was *res adjudicata*, the court expressed the opinion that the Commissioner might very well have ascertained the plaintiff's damage. But that right was not exclusive, and he might, as was suggested, remit the plaintiff to an action at law to have it ascertained. The decision of the lower court granting judgment was, therefore, affirmed.

The authorities thus cited would seem to lead to the following inferences: *First*, that decisions of the Commissioner on questions brought to him on appeal are *res adjudicata; second,* where the consequence of his decision is a right to money damages, the successful party may apply to the court to have the amount fixed, and the sole function of the court in such case is the computation of damages and the award of a money judgment. Where the direction of the Commissioner, as here, is for the appointment or the promotion of a person, the need of resorting to the court for an order in the nature of mandamus in aid of execution is obvious and requires no further exposition.

No case involving the board of education of this city has come to my attention in which the decision of the Commissioner after appeal has been disputed. In *Matter of Rabenort* v. *Craig* (N. Y. L. J. Dec. 23, 1924, p. 1133), which coincidentally was a matter before me at Special Term, the request was for a mandamus against the comptroller of the city of New York. After the Commissioner of Education had decided that the method of apportioning the payment of so-called vacation salary of teachers was improper, actions were brought in the Municipal Court for money damages by those affected by the ruling. The board of education acquiesced in the result by confessing judgment.

The consequent dispute thereafter was the result of the comptroller's failure to honor the judgments so obtained. He was not permitted judicial review of the action of the education board in acquiescing in the decision of the Commissioner. The judgments were held proper and mandamus ordered. The decision was affirmed (*Matter of Rabenort* v. *Craig*, 215 App. Div. 771) without opinion.

The Commissioner's decision is final on questions of interpretation of issues of law, as well as fact, subject to certain limited qualifications which have been observed in some judicial decisions. In *Matter of Levitch* v. *Board of Education* (243 N. Y. 373) the Appellate Division (216 App. Div. 391) had previously expressed the view that a wrong construction of a statute by the Commis-

sioner of Education is not binding on the court. The higher court, in reversing, said that the fact that the question may have involved the construction or application of a statute did not deprive the Commissioner of jurisdiction or make his determination any the less final or conclusive. An exception as to such conclusiveness was noted in cases where his action appeared to be purely arbitrary.

In *Matter of Fabricius* v. *Graves* (254 App. Div. 19) a further exposition is found, which seemingly opens the door to a review of the order of the Commissioner notwithstanding the legal provision as to its conclusiveness. There, the petitioner sought to review by certiorari the determination of the Commissioner, alleging that it was arbitrary. In reversing the action of Special Term and vacating the order of certiorari, the court said: "While section 890 of the Education Law provides for appeals to the Commissioner of Education in certain matters relating to the school system and its administration and that his decision in such appeals shall be final and conclusive and not subject to question or review in any place or court whatsoever, the courts have never held that this prevents a judicial review of an arbitrary or unlawful act on his part. (See *Matter of Levitch* v. *Board of Education*, 243 N. Y. 373.) Only by the return can the exact nature of the Commissioner's decision be determined in this case."

It is a matter of importance to clarify this exception to the rule, in view of the fact that the board of education has ignored the Commissioner's order and is now seeking, in defense to the mandamus, to argue *de novo* points already determined adversely to it in the proceedings before the Commissioner.

In appraising the judicial nature of the act of the Commissioner of Education, it must be remembered that he combines both judicial and administrative functions. When he decides appeals where he has occasion to construe statutes, he undoubtedly acts in a judicial capacity. But in passing upon the propriety of educational policy by a particular school board or school district, he acts in a broader capacity than the courts, by reviewing at times administrative acts of discretion of which a court would refuse to take cognizance.

The decision last referred to points to a safeguard against arbitrary, capricious and tyrannical action by opening the door to court intervention in situations where it otherwise would be barred. Similar action was taken in *People ex rel. Lodes* v. *Dept. of Health* (189 N. Y. 187), where the court, recognizing that the board of health had the power to act in a quasi-judicial capacity, nevertheless held that where the action has been arbitrary, tyrannical and unreasonable, a remedy through mandamus exists to right the wrong.

There is not the slightest evidence in that direction presented in the record. The questions as to the necessity of the position, its statutory nature, the method of nomination, the duty of the board of education in consequence of such nomination, are matters that have all been determined upon the hearing before the Commissioner and cannot be argued *de novo*. If respondent had any intention to charge arbitrariness in arriving at the conclusion, it should have brought up the whole record of the proceedings. A review would probably have been in order, in that event, before the Appellate Division of the Third Department. Respondent, however, will not be permitted to attack the wisdom of the Commissioner's interpretation of the law when an attempt is made to enforce his ruling. This it is endeavoring to do collaterally by attempting to review his interpretation of the statute.

In one respect, however, respondent may be permitted to be heard. If the act which the board of education is commanded to do is in conflict with constitutional requirement, it may be raised at this point. A privilege or a right which is merely personal, even though guaranteed by the Constitution, may be waived. A fundamental public right, however, which involves the interest of the citizens at large cannot be disregarded, and a constitutional question in respect thereof may be raised at any time, and even upon the court's own motion. (*People ex rel. Battista* v. *Christian*, 249 N. Y. 314.) The Commissioner has declined to make any formal ruling upon the constitutionality of the law. His comments, however, in his rulings, indicate his belief that it is constitutional. As he has specifically stated that the issue should be left to the court, a re-examination of this question will be sanctioned in this proceeding, irrespective of the failure of the respondent to initiate affirmative steps to raise it.

The Constitution provides that " appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." (State Const. art. V, § 6.)

This provision, notwithstanding occasional observations to' the effect that it is self-executing, is not entirely so but has had to be supplemented by legislation. This was necessary to provide classification of the civil servants and establishment of machinery for the conduct of the examinations.

In fact, the Constitution contained express direction that laws should be made for the enforcement of that section. " The Legislature in obedience to that command has enacted the Civil Service Law. We have no thought to suggest that with the enactment of

that law its power was exhausted. It may adopt some other agency, and even classify for itself, if its classification can reasonably be regarded as a genuine endeavor to extend the constitutional test to the limit of the practicable. (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92, 99; *Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435, 443.) " (*Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435, 440, 441.)

The Civil Service Law provides the principles of classification of employees within constitutional limitations, and also designates the administrative machinery for executing the law through State and local civil service commissioners. These are given the power in their discretion and under legislative direction and constitutional safeguard, to change and extend the existing classifications, and adapt them to new branches of service which it may be found necessary to establish in the public interest. The commissioners have no jurisdiction over the so-called unclassified service hereinafter mentioned, which includes members of the teaching and supervising staff and also members of the compulsory attendance bureau in which the petitioner is employed. The power of classification for the educational officers and employees, analogous to that for the rest of the civil service, resides in the board of superintendents, whose authority in that respect is defined by subdivision 5 of section 872 of the Education Law.

In providing a schematic plan consisting of the unclassified and the classified service, with the latter subdivided into the exempt, the non-competitive and the competitive class, the Legislature gave effect to the mandate of the Constitution to classify, " so far as practicable." (Civ. Service Law, §§ 9–15.) The creation of these classes was a recognition of the well-known fact that the Constitution did not require *every* public servant to be selected from a competitive list. An unclassified service was created by section 9, consisting of all elective officers, legislative officers and employees, heads of any department, and superintendents, and principals or teachers in public schools, academies or colleges. In the classified service exemptions from examination were provided for the deputies of principal executive offices, one secretary of each State or municipal department or board, and one clerk and deputy clerk of each court. The categories mentioned as belonging to the unclassified and exempt classes are not intended to be exhaustive of the list enumerated in the statute, but sufficient for purposes of illustration of the reasoning that follows here.

In commenting upon the officers comprised in the unclassified civil service, the court stated in *Matter of Carow* v. *Bd. of Education* (272 N. Y. 341, 347) " that the Legislature in most cases deter-

mined that it was not practicable to ascertain merit and fitness by examination, and intended that both in appointment and removal the appointing officers should be free to pass upon the merit and fitness of those appointed by them; and in most cases the legislative determination may hardly be challenged as unreasonable." It concluded with the expression, however, that so far as teachers were concerned, the provision in the Education Law that they should be appointed after competitive examination placed them within the principles and rules of the civil service. A reading of these observations of Judge LEHMAN undoubtedly lends support to the view as to the validity of a reasonable limitation of the competitive system by means of legislative enactment. An even more explicit view confirming this is found in that opinion, where it is said (at p. 344) that " within limits which we have attempted to define in other cases, the Legislature may determine whether it is practicable to ascertain merit and fitness for a particular position by competitive examination, or, indeed, by any examination."

There is no doubt that the Legislature may, by statute, exempt a given position from competitive examination. If the determination by that body in this respect is based upon reasonable grounds, it should not be disturbed. As is said in *People ex rel. Schau* v. *McWilliams* (*supra*, p. 99), " if the position be by statute or from its nature exempt from examination and the action of the Commission be palpably illegal the Commission may be compelled to strike the position from the competitive or examination class." (The reference in this quotation is to the Civil Service Commission.)

In developing this thought, it was said in *Matter of Volgenau* v. *Finegan* (163 Misc. 554; affd., 250 App. Div. 757; leave to appeal granted, Id. 852; leave to discontinue appeal granted, 275 N. Y. 546): " It is true that the Legislature cannot place a position in an exempt class when the constitutional principle puts it in the competitive class. On the other hand, some weight should be put upon an act of Legislature in placing a position in the exempt class as against the judgment of a civil service commission that it should be in the competitive class."

An illustration of violation of the constitutional mandate by the Legislature is found in *Matter of Ottinger* v. *Civil Service Comm.* (*supra*), where the employees of a whole bureau or department were by legislative act declared exempt in gross. Judge CARDOZO properly said about such a legislative fiat (*Matter of Ottinger* v. *Civil Service Comm., supra*, p. 443), " No such sweeping exemption within the limits of the administrative departments of the government has ever been proclaimed since the Constitution set bounds to the discretion of the Legislature in the formation of the civil

service." On the other hand, the Legislature may well express its judgment that the constitutional test is impracticable for enumerated or prescribed positions with known or determinate duties. (*Matter of Ottinger* v. *Civil Service Comm., supra.*) Although the general exemption statute was declared unconstitutional, its specific application to ten appointments which involved special deputies and one investigator in one of the bureaus of the Attorney-General was sustained as valid.

What has been said demonstrates that the Legislature has the power, within constitutional limits, to provide for exemptions from competitive examination of positions with defined duties, on the ground that examinations for such specific positions are not practicable. It is evident, however, that no determination by legislative decree in advance could keep pace with the growth of the public service. No such legislation can determine by statutory generalization whether or not a competitive examination is practicable for a position, the duties of which have not yet been definitely foreseen. This is particularly true where a large group of employees performing similar duties is involved, especially where those are not of a high executive or supervisory character, or where the position does not involve one of relation of personal confidence to the appointing power.

To return to the *Ottinger* case (*supra,* p. 442), " The confidential character of a position is a circumstance to be considered in determining whether examination, competitive or non-competitive, supplies a practicable test, but it is a circumstance only, and is not always or inevitably conclusive. (*Simons* v. *McGuire,* 204 N. Y. 253.) What weight shall be ascribed to it in a given relation is not susceptible of ascertainment until the relation is known with all its incidents and functions. At least this must be so when even the test of non-competitive examination is excluded as impracticable. A private secretary may be thought to stand in such a relation to an employer that the *delectus personarum* should be subject to no restriction. One would find it difficult on the other hand to state a reason why a stenographer employed to take the minutes of a hearing or of an examination before trial should be declared exempt from all examination, even non-competitive."

It is true, as contended by respondent, that our courts have been alert to enforce the provision of the Constitution and have guarded against its infringement by legislative fiat or otherwise. But this does not mean that the constitutional direction to make a selection by competitive examination, where practicable, is an unconditional mandate barring the reasonable exercise of discretion on the part of those administering the merit system to decide that such examina-

tions are not practicable in a given case. There is nothing in *Matter of Scahill* v. *Drzewucki* (269 N. Y. 343); *Palmer* v. *Board of Education* (276 id. 222), and *Matter of Andresen* v. *Rice* (277 id. 271) to the contrary. The first case dealt with the rights of a mechanic and mechanic's helper; the second with a carpenter, and the third with a member of the State constabulary. They thus involved subordinate positions.

This court fully recognizes the expression by Judge WERNER in *Matter of Simons* v. *McGuire* (*supra*, p. 257), that the civil service is a matter of evolution, and " Some of the earlier decisions which for a time stood as landmarks have been swept away by later legislation, or supplanted by more recent judicial views based in part upon a gradual and systematic evolution of the statute and in part upon a better understanding of its practical workings." It does not follow, however, that the late cases, such as *Palmer* v. *Board of Education* (*supra*), have abolished the well-established principle of permitting the reasonable exercise of discretion by the Legislature and by the Civil Service Commission, or its analogue in the educational system, to declare certain administrative or executive positions exempt from competitive examination.

In the interpretation of the civil service provision of the Constitution the reasonable exercise of legislative judgment, as to the status of a high administrative position, or one involving personal confidence, is binding upon the civil service authorities. The latter will not override an act of the Legislature, which may place a certain position in the non-competitive or exempt class. Nor will the court disturb such legislative declaration unless it is in clear conflict with the constitutional mandate. If reasonable minds differ as to whether or not it is practicable to hold a competitive examination, the will of the Legislature will control. Where, on the other hand, the Civil Service Commission, or other authority charged with the administration of the Civil Service Law, makes a determination that is in conflict with the views of the executive or appointing authority, the decision of the Civil Service Commission will prevail, and the court will not review the exercise of its discretion.

This point is well illustrated in *Matter of Simons* v. *McGuire* (*supra*, p. 259). There the Legislature had passed an act for the appointment of probation officer of the Court of Special Sessions and defined his duties. Because the statute provided that these officials " shall be deemed the confidential officers of the justices and magistrates," the latter contended this was tantamount to an alleged declaration that the office was to be placed in the exempt

class. The Civil Service Commission insisted upon holding competitive examinations for the positions as against the wishes of the justices to appoint them as within the exempt class. The court did not decide the controversy as one involving a difference of opinion between the Legislature and the Commission. It held that the history of the legislation, in striking from the statute, as at first framed, the clause that "the offices of chief probation officer and probation officer shall be exempt from civil service examination," indicated an intent to leave the question of classification to the discretion of the Civil Service Commission. The word "confidential" as used in the statute was not deemed decisive of a legislative declaration to create exempt positions.

In the light of these judicial views as to the constitutional bounds of the competitive examination system, we may re-examine section 871-a as to the constitutionality of that provision in prescribing competitive examination for a chief attendance officer.

The legislative direction is clear that attendance officers and district supervising attendance officers must be appointed as a result of competitive examinations. Other administrative and supervisory officers and positions of higher grade in such bureau are not thus restricted. From this the inference must be drawn that the nominating body — in this case the board of superintendents — may use its reasonable discretion in selecting such higher grade administrative and supervisory officers, provided it makes the selection from incumbents of a supervisory position of lower grade. It has been the practice in the case of prior appointments to the office of chief attendance officer to allow the board of superintendents to make such nomination according to its reasonable discretion. That board, as had been observed, occupies a position in the educational system analogous to the civil service commission in the non-educational public service. Under subdivision 5 of section 872 it is invested with the duties of designating the qualifications for license for any teaching or supervisory position in the educational system. Within the language of section 871-a, appointments to administrative and supervisory positions, made upon the nomination of the board of superintendents, are, under section 872, within the sphere of the supervision and regulation as to qualifications, etc., of that board. In other words, the board of superintendents has all the discretionary power, within the limits of the Constitution and the statutes, to classify the position of chief attendance officer as belonging either to the exempt, to the non-competitive, or to the competitive class. That board has chosen to make a selection on a non-competitive basis strictly in accordance with the statute. Its reasonable discretion in adopting such

classification must be deemed final within the authority of *People ex rel. Schau* v. *McWilliams* (*supra*, p. 99), where it is said: "But where the position is one, as to the proper mode of filling which there is a fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification."

It is but fair to call attention to the fact that the Commissioner of Education has expressed his opinion that the board of superintendents may use its reasonable discretion to direct the filling of the position by competitive examination, or in the manner it has chosen by non-competitive examination. Its manner of selection cannot be characterized as unreasonable. The affidavits of respondent show that the superintendent of schools, a member of the board of examiners, and the director of the bureau have expressed their opinion as to practicability of filling the vacancy by competitive examinations. The superintendent, however, has been careful to say that the board of superintendents has done no more than to examine "a memorandum of law regarding the legality of filling the position of chief attendance officer by competitive examination. Said report was discussed but was not adopted by the Board of Superintendents as its report." What that board determines will have prospective bearing on the filling of a future vacancy. It has no retroactive effect. The petitioner has acted in the capacity in which he seeks permanent appointment for the past three years; his nomination by the board of superintendents, which had both the power to select and the power to prescribe the method of selection, still stands. The right of the board of education in the matter is limited, in the view of the Commissioner of Education, to rejection for cause directed to the character and personality of the one nominated. It cannot be arbitrarily exercised, and nothing in the papers shows any personal ground for rejection of the nomination. The petition, accordingly, is granted. Settle order.