In the Matter of John F. Powers, Petitioner, against Oscar M. Taylor et al., Constituting the Civil Service Commission of the State of New York, et al., Respondents.

Supreme Court, Special Term, Albany County, March 9, 1955.

*De Graff, Foy, Conway & Holt-Harris* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Henry S. Manley* of counsel), for respondents.

BOOKSTEIN, J. This is an article 78 proceeding in the nature of mandamus to direct the State Civil Service Commission to classify the position of referee established under the Workmen's Compensation Law, in the competitive civil service of the State of New York. Section 150 of the Workmen's Compensation

Law, as amended by chapter 526 of the Laws of 1950, provides that such referees shall be in the exempt class of the classified civil service and petitioner's contention is that such enactment violates section 6 of Article V of the State Constitution providing that " Appointments * * * in the civil service of the state * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ".

Respondents move to dismiss the petition for discretionary reasons and also as a matter of law on the ground that the petition fails to state facts which entitle the petitioner to the relief sought or any relief.

This is not an action for a declaratory judgment, even though, to grant petitioner's prayer for relief, necessarily, there would have to be a declaration of the unconstitutionality of the law under attack, as a prerequisite.

The right of petitioner to maintain this proceeding is squarely established by the decision in *Matter of Andresen* v. *Rice* (277 N. Y. 271). Petitioner is not relegated to the taxpayer's action provided for in section 28 of the Civil Service Law. The action therein provided for is one for a violation of the Civil Service Law itself. This is a proceeding to compel public officers to perform a duty allegedly required by constitutional mandate.

The description of petitioner as an officer of the Civil Service Employees' Association is mere surplusage and neither adds to nor detracts from the efficacy of the petition.

Petitioner contends that it is practicable to test the merits of compensation referees by competitive examination and, that by this motion, the allegations of the petition are admitted. That contention is sound as to factual allegations but not as to conclusory ones. " The allegations of fact are deemed to be true insofar as relevant or material upon any questions upon which a court may pass * * * but not conclusions of law ". (*Matter of Hines* v. *State Board of Parole,* 293 N. Y. 254, 258.)

It is true that " the Legislature cannot act arbitrarily and exempt places from competitive examination at will. The duties must have some relationship to the exemption and the classification must be reasonable." (*Matter of Friedman* v. *Finegan,* 268 N. Y. 93, 98.)

It is also true, as stated by the court, in commenting upon the officers comprised in the unclassified civil service, in *Matter of Carow* v. *Board of Educ. of City of N. Y.* (272 N. Y. 341, 347) " that the Legislature in most cases determined that it was not practicable to ascertain merit and fitness by examination, and

intended that both in appointment and removal the appointing officers should be free to pass upon the merit and fitness of those appointed by them; and in most cases the legislative determination may hardly be challenged as unreasonable."

The Legislature, of course, has the power to classify civil service employees. It need not, though it has done so, delegate such power to another agency, such as the Civil Service Commission. It retains the power, within constitutional limitations as to practicability, to classify certain positions, as exempt from competitive examinations. Such power cannot be exercised arbitrarily but must be exercised reasonably. (*Matter of Ottinger* v. *State Civil Service Comm.*, 240 N. Y. 435, 440–441.)

In *Matter of Keymer* (148 N. Y. 219) the Court of Appeals declared unconstitutional an act exempting certain positions from competitive examinations.

In that case the court said (p. 226):

" While it is true that the Constitution contemplates that it may not always be practicable to ascertain merit and fitness by examinations, or to have these examinations competitive, yet a mere arbitrary declaration in an act of the legislature that competitive examinations * * * are impracticable in cases where the compensation does not exceed four dollars per day, is in plain violation of the provisions of the Constitution making competitive examinations necessary.

" It needs no argument to demonstrate that the rate of compensation attaching to an office is no test of the practicability of subjecting the applicant for the position to a competitive examination.

" It is not necessary at this time to define and limit the power here conferred upon the legislature.

" It is enough to say that the attempted exercise of power in the act of 1895 is void.

" It is quite possible there are or will be offices and positions, by reason of peculiar duties, which experience will demonstrate cannot be filled by competition and when such a case arises it will be competent for the legislature to provide for it by an appropriate act disclosing the circumstances which justify its intervention ".

In *Matter of Ottinger* v. *State Civil Service Comm.* (240 N. Y. 435, 440–441, *supra*) the court said, in substance, that the Legislature may classify for itself, " if its classification can reasonably be regarded as a genuine endeavor to extend the constitutional test to the limit of the practicable * * * What that limit is, may not be determined * * * irrespective of experi-

ence ''. The statute under consideration in that case was '' not an expression of the legislative judgment that the constitutional test is impracticable for enumerated or described positions with known or determinate duties. Its aim is far more drastic. It authorizes the Attorney-General not merely to create the positions, but also to define their duties, and declares in advance that, whatever the definition, there shall be exemption from all examination, competitive or noncompetitive. To sustain a privilege so sweeping, the Legislature must have been able to say that neither this Attorney-General nor any other could at any time establish any position having relation to this bureau for which examination of any kind, competitive or noncompetitive, would supply a practicable test of merit or fitness. *The question is not whether the particular appointments covered* by this payroll might have been placed within the exempt class if the statute had been limited to them. Other positions may be created hereafter either by this Attorney-General or by his successors ''.

'' We think a statute which declares in advance of the event that any and all positions now or at any time established in connection with this bureau, shall be withdrawn from the jurisdiction of the Civil Service Commission and filled without examination of any kind, does not enforce the Constitution to the limit of the practicable ''. (Italics supplied.)

In the *Matter of Keymer* (148 N. Y. 219, *supra*) the low rate of pay was the only criterion and basis for the legislative exemption from competitive examination. As the court said (p. 226), '' It needs no argument to demonstrate that the rate of compensation attaching to an office is no test of the practicability of subjecting the applicant for the position to a competitive examination ''.

The situations there and here are certainly not comparable.

In *Matter of Ottinger* v. *State Civil Service Comm.* (240 N. Y. 435, *supra*) a new bureau was created and all positions to be filled therein were exempted by the legislative act creating the bureau. As to certain employees appointed, the Civil Service Commission refused to honor the payroll. There was no definition of the duties of the new appointees. The appointing power could create positions, define their duties, etc. and declare in advance exemption from all examinations, competitive or noncompetitive. The act was held unconstitutional and the sound reasons for such holding are plainly apparent from a reading of the court's opinion.

But here we have no parallel situation.

Here we are dealing with but one group of employees in a large department. It is a group who, by one title or another, has functioned since 1914.

Examining the statutes referring to such group from their inception; taking judicial notice of such public documents and records, of which the court is entitled to take such notice, under the decision in *Pfleuger* v. *Pfleuger* (304 N. Y. 148) we find a situation that presents quite a different picture from that which confronted the court in *Matter of Keymer* (*supra*) and *Matter of Ottinger* v. *State Civil Service Comm.* (*supra*).

Chapters 50 and 642 of the Laws of 1921 contained the first provision for referees under the Workmen's Compensation Law. They enacted the provision found in section 19 of the Labor Law until 1945 when it became section 150 of the Workmen's Compensation Law. Promptly after the 1921 enactments aforesaid, the Civil Service Commission placed the referees in the exempt class, it having determined competitive or noncompetitive examination for the position was not practicable. Except for a short interval, when the Civil Service Commission did conduct a competitive examination for the position and, though there have been steady increases in the total number of referees, from the time the position was first created, down to the present time, the Civil Service Commission has exempted referees from competitive or noncompetitive examinations. The legality of its action in that respect has never been questioned or attacked in any court proceeding. The duties of the office are judicial in nature. It must be presumed that the Legislature was well acquainted with the origin and subsequent history of the position and of the determinations of the Civil Service Commission that it was impracticable to fill the position by competitive or noncompetitive examinations. Certainly in the light of the history of the position and its classification as exempt, one could hardly say that the amendment of section 150 of the Workmen's Compensation Law by chapter 526 of the Laws of 1950, was an arbitrary declaration by the Legislature. The Legislature had the guide of many years of experience. The Civil Service Commission, on at least one occasion, resorted to the experiment of competitive examination and thereafter abandoned that method. The only logical conclusion is that it found such method impracticable and it returned to its earlier system of exemption. Within a few days after the enactment of chapter 526 of the Laws of 1950, the Civil Service Commission again adopted a resolution declaring it impracticable to fill the position

by examination and increased the number of exempt referees, to keep pace with the increased number of them.

The enactment in question does not violate section 6 of Article V of the Constitution.

Motion to dismiss petition is granted. All papers to Attorney-General, except petitioner's brief and reply brief, which are herewith transmitted to his attorneys.