In the Matter of the ATTORNEY-GENERAL OF THE STATE OF NEW York, Appellant. AMERICAN RESEARCH COUNCIL, INC., Nicholas Darvas et al., Respondents.

First Department, April 11, 1961.

*Samuel A. Hirshowitz* of counsel (*Daniel M. Cohen* and *Philip Weinberg* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellant.

*Milton A. Bass* of counsel (*Bass & Friend,* attorneys), for respondents.

*Per Curiam.* This appeal brings up for review an order vacating a prior order granted ex parte directing the respondents to appear in court at a stated time and place with certain described books, papers and records for examination " concerning their practices, transactions and courses of business relating to the promotion, issuance and distribution of investment advice within and from the State of New York " since January 1, 1953.

In the Summer of 1960 the corporate petitioner published a book purportedly written by one Darvas under the title "How I Made Two Million Dollars In The Stock Market." Thereafter the appellant, the Attorney-General, commenced an investigation under the provisions of article 23-A of the General Business Law, commonly referred to as the "Martin Act". It is unnecessary to detail the ensuing proceedings but it may be gathered from the record that the conclusion of the Attorney-General as stated in an answering affidavit that he "has not been much aided by the publisher, American Research Council, Inc." had a factual basis. Among other things, the president of the Council appeared before the Attorney-General in November, 1960 and invoked his privilege against self incrimination when asked a series of questions concerning his knowledge of the circumstances surrounding the publication of the book.

These considerations aside, we must decide whether the book and other material, including advertisements published by the Council, when considered together, come within the purview of the statute so that the Attorney-General has power and jurisdiction to proceed. Section 352 of the General Business Law, among other things, empowers the Attorney-General to conduct a preliminary investigation whenever any person engages in "any practice or transaction or course of business relating to * * *. investment advice * * * which is fraudulent or in violation of law and which has operated or which would operate as a fraud upon the purchaser". Section 359-eee as added by chapter 961 of the Laws of 1960, among other things, defines an "investment advisor" as one "who, for compensation, engages in the business of advising members of the public, either directly or through publications or writings within or from the state of New York, as to the value of securities or as to the advisability of investing in, purchasing, or selling or holding securities".

Turning to the book in question we agree with the conclusion reached by Special Term that fairly considered in its entirety it describes certain methods used in specific transactions, actual or fictional, which turned out successfully for the author. The publication and the accompanying promotional advertisements are not "investment advice" within the meaning of the statute but certain theories of investment purportedly adopted and followed by the author.

We do not find in this record, however, any concession, as stated by Special Term in its opinion, that the aim of the appellant was to suppress the book. Therefore, we do not reach, pass upon or approve so much of the opinion of Special Term as characterized the use of the Martin Act by the Attorney-General

or decided that his actions constituted a violation of any provision of Federal or State Constitutions.

The order appealed from should be affirmed.

VALENTE, J. (dissenting). I dissent and would reverse the order and permit the Attorney-General's investigation to proceed.

The majority opinion affirms the conclusion of Special Term that in the promotion and sale of the Darvas book the American Research Council, Inc. (Council) and its president were not engaged in giving any "investment advice" and for that reason the Attorney-General may not investigate their activities under section 352 of the General Business Law. Consideration of this appeal must commence with the factually well-supported assumption that the investigation embarked upon by the Attorney-General is not designed to suppress the publication and distribution of the Darvas book, but to determine whether there is a basis for injunctive relief against fraudulent practices in connection with the publishing, promotion and sale of the book.

Initially, the record shows that the Council was registered with the Securities and Exchange Commission as an "investment advisor" and has been so registered since 1956 pursuant to the Federal Investors Advisory Act of 1940 (U. S. Code, tit. 15, § 80b). The order which the Attorney-General obtained pursuant to section 354 of the General Business Law was based on affidavits by the Attorney-General averring, among other things, that the Council was in the business of investment advice, was registered as an investment adviser under the Federal statute, had conducted an extensive advertising and mail-order campaign in connection with the book and had made misleading references on the book jacket. Since, in the words of CARDOZO, J., in *Matter of Ottinger* v. *Civil Serv. Comm.* (240 N. Y. 435, 439) the Attorney-General "almost upon mere request [he] may have an examination before trial of parties or of witnesses" in an investigation under the Martin Act, there was certainly a sufficient basis averred here to secure an order for the examination of the Council and its principal officer with regard to their activities in connection with the Darvas book. It was not necessary for the Attorney-General, at this stage of the proceedings, to establish his right to any particular relief in any subsequent action.

Both the majority opinion and that of Special Term make reference to the chapter 961 of the Laws of 1960 which added to section 352 of the General Business Law the words "investment advice", added a new section 359-eee defining an "investment advisor" and provided for the registration of investment advis-

ors. However, there can be no doubt that before the enactment of chapter 961 of the Laws of 1960, the Attorney-General had the power to proceed against persons responsible for investment advice that fell within the fraudulent practice proscription of the Martin Act. The provisions of the 1960 amendments unquestionably were introduced to require the registration of "investment advisors"; and having required the registration of the persons defined in section 359-eee, it was deemed suitable to refer specifically to "investment advice" and "investment advisors" in other sections of article 23-A of the General Business Law. Obviously, the requirement of registration was designed to facilitate regulation by furnishing the identity of any person in the field. It perverts the purpose of the enactment to hold that a person engaged in practices that might otherwise be deemed to fall within the Martin Act concept of a "fraudulent practice", may be permitted to roam the securities market or field of investment advice, freed from any possible restraint by the Attorney-General because such person is either nonregistered or not subject to registration requirements. Hence, the provisions of section 352 cannot reasonably be deemed to be limited by the definition of "investment advisor" contained in section 359-eee.

The Martin Act created a comprehensive scheme for the protection of the public from misleading representations in the field of securities (see *People* v. *Federated Radio Corp.*, 244 N. Y. 33). Deceitful practices may assume a myriad of forms, but so long as they may have a tendency to deceive or mislead the purchasing public, the Attorney-General should not be hampered in an attempt to uncover a "fraudulent practice". On the record before us, there was a sufficient basis for the Attorney-General to proceed in his investigation; and that inquiry should not have been aborted by vacating the order obtained pursuant to section 354 of the General Business Law.

BREITEL, J. P., McNALLY, STEUER and BASTOW, JJ., concur in *Per Curiam* opinion; VALENTE, J., dissents and votes to reverse in opinion.

Order entered on January 12, 1961, granting petitioners-respondents' motion to vacate and set aside the ex parte order of the Supreme Court, New York County, dated December 7, 1960, directing them to appear for examination and to produce certain books and records, affirmed, with $20 costs and disbursements to respondents.