Chief Judge Desmond (dissenting).
In December, 1960 an ex parte order was made by Special Term under section 355 of the General Business Law requiring Nicolas Darvas, American Research Council, Inc., publisher of a book written by Darvas, and Bernard Hazel, president of American Research Council, to appear in the court to be examined and to produce relevant papers, records, etc., concerning alleged fraudulent practices ‘ ‘ relating to the action which the Attorney General has determined to bring ’ ’ including all papers and records in regard to the activities of Darvas, Research Council and Hazel ‘ ‘ concerning their practices, transactions and courses of business relating to the. promotion, issuance and distribution of investment advice within and from the State of New York ”. At the same time a notice to appear and a subpoena was served on Research Council and on Hazel but apparently not on Darvas. The procedure followed was that described in section 354 of the General Business Law (which section is part of the so-called “ Hartin Act ”) authorizing the Attorney-General, whenever he has determined to commence an action under the Hartin Act, to present to any Supreme Court Justice an application for such examination. The Hartin Act is article 23-A of the General Business Law which is headed “ Fraudulent Practices in Respect to Stocks, Bonds and Other Securities ” and in general authorizes investigation of, and criminal and civil suits because of, frauds in dealings in securities. The whole attack of the Hartin Act is against stock frauds of various kinds and, while the sections are very broad in terms and give the Attorney-General broad powers of investigation, their coverage is limited to fraudulent practices in regard to securities. We agree with the courts below that there is nothing in these papers to show any such fraudulent practices and so no basis appears for the inquiry.
It was not until 1960 (L. 1960, ch. 961, § 3, eff. July 1, 1960) that there was added to the Hartin Act section 359-eee requiring *114 the registration with the State Law Department of * ‘ investment advisors ’ ’ and prohibiting anyone from engaging in that business without such registration. “Investment advisor” is closely defined in section 359-eee to include persons who for compensation engage in the business of advising members of the public, directly or through writings, as to the value of securities or the advisability of investing or buying or selling securities, etc. All that Darvas did was to write a book, which American Research Council published and which became a best seller, entitled ‘ ‘ How I Made $2,000,000 in the Stock Market ’ ’ and in which Darvas, a professional dancer, wrote an account of his actual or purported experiences in the stock market. The Martin Act should not be and cannot reasonably be construed to deal with such a book. We do not think the Legislature ever intended that the Attorney-General should use his investigatory powers to stop or slow up the sale of such a book, in order to protect venturesome people from their urges to gamble in stocks.
This proceeding was brought on by a motion made by American Research Council and its president Mazel for the vacatur of the ex parte order. The motion was based on an affidavit of respondents’ attorney who denied the authority of the Attorney-General to proceed with reference to this book since, according to the affidavit, an “ investment advisor ” is a person who for “ compensation ” engages in the business of advising members of the public as to the value or advisability of ‘ ‘ investing, purchasing, selling or holding” securities. Neither the Council nor Darvas nor the book, argues the affidavit, has done anything like that. The book, as the affidavit correctly says, is simply an autobiographical work describing, after the manner of Rockefeller, Carnegie, Vanderbilt, Baruch and others, a series of profitable stock ventures, and there is nothing to show any fraudulent purpose or fraudulent act. In opposition there was filed an affidavit of an Assistant Attorney-General. Among other things, the latter pointed out, citing Matter of Ottinger v. State Civ. Serv. Comm. (240 N. Y. 435) and People v. Federated Radio Corp. (244 N. Y. 33), that the Attorney-General has power to investigate anything which looks like a fraudulent practice and that a showing of materiality or relevance is not a prerequisite (see Matter of Edge Ho Holding Corp., 256 N. Y. 374). The Attorney-General’s affidavit shows that in promotional material *115 for the book the publisher made statements that the Darvas method would make profits for readers and would serve as a useful guide to investors, etc. But there is a vast difference between selling definite investment advice and trying to get sales for a book by asserting that it will help readers make money. We find nothing in this book advising anyone to do anything although, of course, like every other biography of a successful trader, it may suggest that the wise reader will go and do likewise. Completely absent is any showing of a fraudulent intent unless self-laudation and boasting of one’s cleverness is somehow a fraud.
Special Term granted the application to set aside the ex parte order. In its opinion it said that the aim of the proposed examination by the Attorney-General ‘£ is conceded to be the suppressing of the publication and further distribution ’ ’ of the book. In its affirming Per 'Curiam opinion the Appellate Division wrote that it found in this record no such concession. That is correct but we were told on the argument by respondents’ counsel that this concession was made orally at Special Term and the Assistant Attorney-General who argued the appeal in our court did not deny this. The Special Term opinion points out that respondent American Research Council, Inc., has for some reason registered itself as a professional investment advisor with the United States Securities and Exchange Commission but it still remains that there is nothing before us to show that it ever actually engaged in the business of giving investment advice, as distinguished from publishing this book. Certainly the book does not constitute ££ investment advice” within any reasonable meaning of the term. The Special Term opinion said correctly that there is a real difference between “touting” stocks and publishing as a biographical sketch a narrative of a series of transactions by a named investor. The lower court remarked that the Attorney-General’s construction would give him censorship or suppression power over any writing which describes stock transactions or investment principals. To repeat, this book does not make any recommendations of any kind."
The Appellate Division’s opinion takes the same ground as did Special Term. One Justice dissented. He wrote that the Attorney-General, before the enactment of the 1960 ameu^ment^ *116 had power to proceed against persons “ responsible fdr investment advice that fell within the fraudulent practice proscription of the Martin Act ’ But nowhere in his opinion do we find any explanation as to how the writing and publication of this biography could be considered to be a “ fraudulent practice ’ ’ under the Martin Act.
The order should be affirmed, with costs.
Judges Dye, Fuld and Foster concur with Judge Froessel; Chief Judge Desmond dissents in an opinion in which Judges Van Voorhis and Burke concur.
Order reversed and matter remitted to Special Term for further proceedings in accordance with the opinion herein, with costs in this court and in the Appellate Division.