OPINION OF THE COURT
Robert F. Doran, J.
The issue in this proceeding is whether the New York State Police Troop "B” Headquarters shall be relocated from the Village of Malone, County of Franklin, to Ray Brook, New York, which is in the Town of North Elba, County of Essex. A brief history of the background of the proposed relocation and of the legal proceedings so far will contribute to an understanding of this decision involving an order to show cause brought by the defendants.
In 1964, a process was begun for a realignment of the New York State Police Administrative Facilities across the State to ensure more efficient service to the residents of the State of New York. As part of this process, a new administrative facility to house the Headquarters of Troop "B” was proposed to be built in Ray Brook, New York, which is within the boundaries of the Adirondack Park. The estimated cost of the new headquarters is $3.8 million. The area covered by Troop "B” includes St. Lawrence, Clinton, Franklin and Essex Counties and the northern part of Hamilton County.
In order to obtain the necessary approvals for the construction of the new headquarters, the Division of State Police was confronted with frontiers not heretofore encountered in the establishment of a headquarters facility, i.e., the Adirondack Park Agency provisions contained in sections 800 through 819 of the Executive Law and the provisions of the State Environmental Quality Review Act found in ECL 8-0101 through 8-0117.
Pursuant to section 213 of the Executive Law, the Superintendent of State Police heretofore had rather unbridled authority to establish headquarters in whatever localities he deemed suitable, subject only to an appropriation being made and title to the real property involved being approved by the Attorney-General.
Prior to 1977, numerous unsuccessful attempts had been made by the Division of State Police to have the Headquarters of Troop "B” relocated to Ray Brook. Then, within the budget year of 1977, the Division of the Budget approved the reloca *194 tion, and the recommendation was supported by the Governor and affirmed by the Legislature. The sum of $3.8 million was provided to design and construct the new facility.
One of the stated purposes of the new facility is that it initially be used as a communications and security center for the 1980 Olympics and subsequently as Troop "B” Headquarters. It is obvious from the papers submitted on the order to show cause before me that the Division of State Police and the Office of General Services resisted the new frontiers set before them by the new Adirondack Park Agency and State Environmental Quality Review Act provisions. Indeed, when the Adirondack Park Agency hearing was finally held, counsel for the Division of State Police stated for the record that the division would not concede that the Adirondack Park Agency had any jurisdiction to review the proposed relocation and proposed new headquarters.
The court could well take judicial notice of the fact that the Division of State Police is not the only governmental agency, private citizen or private corporation which has shown resistance to the new frontiers set before the people of the State of New York by these two new laws passed by the Legislature and signed by the Governor. However, whatever one’s personal feelings — and there are strong ones both pro and con— this court and any court that reviews this matter subsequently has to take these new laws at face value, interpret them and extract from them the Legislature’s full intent. Like them or not, these laws have been enacted, and only the Legislature and the Governor can rend asunder what they have joined together so far.
The gravamen of the County of Franklin’s complaint is that there was an illegal failure to comply fully with the State Environmental Quality Review Act and Adirondack Park Agency provisions.
For example, the plaintiif, the County of Franklin, alleges that it was denied full party status in the Adirondack Park Agency hearing and that the initial hearings were held during a blinding snowstorm, which prevented the attendance of anyone from Franklin County. The County of Franklin alleges that compliance with the State Environmental Quality Review Act and with the Adirondack Park Agency was lacking in several important aspects and that the Adirondack Park Agency decision was fraught with improprieties. The county points out, for example, that the Adirondack Park Agency was *195 at the end in such a hurry to render its decision that a clairvoyant press-release writer apparently had the decision of approval two days before the Adirondack Park Agency actually met to approve the project. One can well surmise that there was great pressure emanating from many sources to speed up the Adirondack Park Agency review process, out of concern that lest the project started early in 1978, it would not be completed in time for the 1980 Olympics. However, it cannot be gainsaid that if illegal and improper shortcuts were taken which trampled on the legitimate rights of proper parties, then the Adirondack Park Agency proceeding should be annulled and vacated and a new hearing ordered that will properly serve the ends of justice and give full meaning to the intent envisioned by the Legislature when it passed the Adirondack Park Agency and State Environmental Quality Review Act provisions.
As to the legal proceedings to date, the County of Franklin, after the Adirondack Park Agency issued its order and agency determination approving the project on March 3, 1978, commenced the instant action by service of a summons on March 27, 1978. A motion for a preliminary injunction was instituted on March 31, 1978 by order to show cause signed by the Honorable Norman L. Harvey, Supreme Court Justice. The order to show cause included a temporary restraining order, pending the hearing of the motion, directing the defendants not to commence or proceed with the construction of the proposed new headquarters. Oral argument on the motion for preliminary injunction and on the defendants’ cross motion to dismiss the fourth cause of action was heard by the Honorable James Gibson, Supreme Court Justice, on April 6, 1978. From the Bench, Justice Gibson granted the plaintiffs motion for a preliminary injunction and denied the defendants’ cross motion. It is alleged by the plaintiff that during oral argument before Justice Gibson, the issue of the plaintiffs standing to sue was thoroughly argued, and indeed, the brief that had been submitted to Justice Gibson thoroughly covered the issue.
The defendants appealed the granting of the preliminary injunction. The County of Franklin moved pursuant to CPLR 5519 (subd [c]) to vacate the statutory stay that went into effect on the filing of the appeal. By decision dated April 19, 1978, the Appellate Division, Third Department, denied the motion by a divided court (4-1, Justice Main dissenting). The *196 effect of the statutory stay of the preliminary injunction is that the defendants have been allowed to proceed with the construction of the new headquarters building in Ray Brook. It is the court’s understanding that construction is well under way.
The defendants’ order to show cause seeks: (1) to convert this alleged declaratory judgment action to a proceeding under CPLR article 78, pursuant to CPLR 103 (subd [c]); (2) to dismiss the complaint herein, pursuant to CPLR 3211 (subd [a], par 7), on the basis of the plaintiff’s lack of standing to maintain the action; or, in the event the motion to dismiss is denied (3) to dismiss, pursuant to CPLR 3211 (subd [a], par 5), those causes of action alleging violations by the defendant Division of State Police of the State Environmental Quality Review Act provisions, as barred by the Statute of Limitations; or (4) to dismiss causes of action one through six on the ground that each seeks relief in the nature of mandamus to compel the Adirondack Park Agency to reconvene a review which, under section 814 of the Executive Law, is purely discretionary in the first instance. Finally, the defendants request this court to treat this motion as one for summary judgment, pursuant to CPLR 3211 (subd [c]).
On the defendants’ first point, conversion of the declaratory judgment action to an article 78 proceeding, the court agrees with the defendants that an analysis of the complaint establishes that it actually seeks relief in the nature of mandamus and certiorari. For example, the prayer for judgment requests that on the first cause of action, a judgment be granted requiring the Division of State Police and the Office of General Services to submit a proper and timely notice of intent with respect to the proposed project and directing the Adirondack Park Agency to reconvene the public hearing upon receipt of a proper notice of intent. On the second cause of action, judgment is requested requiring the Adirondack Park Agency to hold a lawful public hearing and to admit the plaintiff as a party thereto with all the attendant rights thereof, including, but not limited to, the right to cross-examine witnesses and to present evidence. On the third cause of action, judgment is requested requiring the Adirondack Park Agency to issue an order to the Division of State Police and the Office of General Services not to undertake the project for up to 90 days following the commencement of a reconvened *197 public hearing. Causes of action four through nine contain similar requests for relief.
This, together with the entire complaint, leads the court to believe that the proper form of this action should be an article 78 proceeding and that the defendants are entitled to have the action convérted to such a proceeding by virtue of the authority granted in CPLR 103 (subd [c]). Such relief is granted despite the fact that paragraph 1 of the amended complaint initially states that this is an action for judgment declaring void and annulling, vacating and setting aside the order and agency determination of the Adirondack Park Agency authorizing the relocation of the Troop "B” Headquarters to a site within the Adirondack Park.
On the issue of standing to sue, the court finds that it is bound under the law-of-the-case doctrine by virtue of Judge Gibson’s granting of the preliminary injunction. During argument, as stated before, the issue of standing to sue was argued and briefed before Judge Gibson. The doctrine of the law of the case is a rule of practice based upon the sound policy that when an issue is once litigated and decided, that should end the matter, at least insofar as a court of co-ordinate jurisdiction is concerned (Martin v City of Cohoes, 37 NY2d 162; see, generally, 1 Carmody-Wait 2d, NY Prac, §§ 2:64-2:69).
The defendants, in opposition, cite cases which stand for the proposition that the granting or denying of a preliminary injunction does not constitute the law of case or any sort of adjudication on the merits (Walker Mem. Baptist Church v Saunders, 285 NY 462, 474; Tucker v Toia, 54 AD2d 322, 325; State of New York v Horsemen’s Benevolent & Protective Assn., 81 Misc 2d 577, 583).
The court agrees that Justice Gibson’s granting of the preliminary injunction is not determinative as to the ultimate issue herein — i.e., whether the State Environmental Quality Review Act and Adirondack Park Agency provisions were so illegally ignored and bypassed as to make those proceedings a nullity and to require a new hearing and proper compliance with those provisions. However, on the issue of standing to sue, this court believes that it is bound by the law-of-the-case doctrine.
Even if this court were to hold that the doctrine of the law of the case does not apply herein, it would still hold that the plaintiff in this lawsuit has standing to sue.
Both sides have cited several Federal cases interpreting the *198 Federal National Environmental Policy Act, which contains provisions similar to New York’s State Environmental Quality Review Act. The defendants argue that their cases support the proposition that a community that has something being taken away from it has no standing to sue but, rather, that the only important consideration is the area of the proposed new project. On the other hand, the plaintiff cites several Federal cases that support the proposition that a review and analysis must be made of the social and economic impact on the area that is being abandoned as well as on the area of the new site.
The plaintiff cites the case of City of Rochester v United States Postal Serv. (541 F2d 967) decided by the Second Circuit. In that case, the Postal Service had commenced construction of a new postal service facility in a suburb of Rochester. That construction, as in the present proceeding, contemplated the ultimate abandonment of an older facility in the City of Rochester. The Postal Service had not prepared and filed an environmental impact statement, nor had it sufficiently examined alternatives and complied fully with other statutory requirements. The Postal Service argued, as do the defendants here, that the construction of the new facility and abandonment of the old facility in the city were "entirely separate and apart.” The Second Circuit disagreed and stated that the National Environmental Policy Act mandates comprehensive considerations of the social and economic effects of all actions. The court, in discussing the social and economic effects associated with the project, and the standing of the City of Rochester to challenge the move, stated (pp 973-974): "More importantly, the Postal Service wholly neglected consideration of possibly major environmental effects associated with this project. The transfer of 1,400 employees alone could have several substantial environmental effects, including (1) increasing commuter traffic by car between the in-city residences] of the employees and their new job site (only one bus route currently serves the HMF [Henrietta Mail Facility — the new site] site; whether many current employees will find the HMF a more convenient work location is unknown); (2)(a) loss of job opportunities for inner-city residents who cannot afford or otherwise manage, to commute by car or bus to the HMF site, or (b) their moving to the suburbs, either possibly leading 'ultimately [to] both economic and physical deterioration in the [downtown Rochester] community,’ cf. City of New York v. United States, 337 F. Supp. 150 (E.D.N.Y. 1972) (three-judge *199 court); and (3) partial or complete abandonment of the downtown MPO which could, one may suppose, contribute to an atmosphere of urban decay and blight, making environmental repair of the surrounding area difficult if not infeasible. See Trinity Episcopal School Corp. v. Romney, 523 F. 2d 88, 93 (2d Cir. 1975) (federal agency must consider impacts of its action on urban decay and blight and the city development planning)”. (Emphasis added.)
The plaintiff cites other, similar cases to support its position (Hanly v Mitchell, 460 F2d 640, 646-647, cert den sub nom. Hanly v Kleindienst, 409 US 990, subsequent app sub nom. Hanly v Kleindienst, 471 F2d 823, 830-834, cert den 412 US 908, subsequent app 484 F2d 448, cert den sub nom. Hanly v Saxbe, 416 US 936; McDowell v Schlesinger, 404 F Supp 221, 241-245; Prince George’s County, Md. v Holloway, 404 F Supp 1181, 1186-1187). The defendants attempt to distinguish these cases on the ground that they all involve big-city situations. However, a thorough analysis of these cases seems to indicate that it should make no difference that we are here concerned with the Village of Malone in rural up-State New York, rather than with a big-city situation. Indeed, if anything, the social and economic impact on the village occasioned by the removal of Troop "B” Headquarters may be even greater than that occasioned by the removal of a post-office facility from the center of the City of Rochester.
The defendants cite several cases in their memorandum that hold to the contrary. However, several of those cases are from Circuit Courts of Appeals other than the Second Circuit Court of Appeals (Breckinridge v Rumsfeld, 537 F2d 864, cert den 429 US 1061; National Assn, of Govt. Employees v Rumsfeld, 413 F Supp 1224, affd sub nom. National Assn, of Govt. Employees v Brown, 556 F2d 76; Clinton Community Hosp. Corp. v Southern Md. Med. Center, 510 F2d 1037, cert den 422 US 1048). It seems to this court that the cases cited by the County of Franklin are more applicable, and certainly, if those cases hold that the National Environmental Policy Act provisions contemplate examination of the socioeconomic impact on an area from which a governmental facility is to be removed, then it seems to the court that under our own State Environmental Quality Review Act provisions this result should be even more true because of the express reference to economic factors in the State Environmental Quality Review Act rules and regulations.
*200 The State Environmental Quality Review Act regulations (6 NYCRR 617.1 [d]) state: "It was the intention of the Legislature that the protection and enhancement of the environment, human and community resources should be given appropriate weight with social and economic considerations in public policy, and that those factors be considered together in reaching decisions on proposed activities. Accordingly, it is the intention of this Part that a suitable balance of social, economic and environmental factors be incorporated in the planning and decision making process of State, regional and local agencies. It is not the intention of SEQR that environmental factors be the sole consideration in decision making. ” (Emphasis added.) Thus, it appears that the State Environmental Quality Review Act provisions and the rules and regulations promulgated thereunder mandate that we go beyond purely environmental factors. It therefore follows that some of the cases cited by the defendants which construe the National Environmental Policy Act provisions as stating that purely environmental factors are to be considered would seem to be inapposite.
When one considers the Federal cases cited by the County of Franklin dealing with the National Environmental Policy Act and the provisions of the State Environmental Quality Review Act and the rules and regulations promulgated thereunder, it seems clear that the interest sought to be protected by the plaintiff is within the zone of interest to be protected by the State Environmental Quality Review Act provisions and the rules and regulations thereunder.
It also appears to the court that the State Environmental Quality Review Act provisions and its rules and regulations were a proper part of the Adirondack Park Agency proceeding in this matter. The court nevertheless feels that even apart from the Adirondack Park Agency proceedings, the plaintiff would have standing to sue if the State Environmental Quality Review Act provisions were not fully complied with and such noncompliance did violence to the rights of the plaintiff.
Even if one looks at the problem strictly from the point of view of the Adirondack Park Agency proceedings, it is the court’s belief that the plaintiff would have proper standing to sue. Under subdivision 1 of section 817 of the Executive Law, any act or omission of any officer or employee of the Adirondack Park Agency may be reviewed at the instance of "any aggrieved person” in accordance with CPLR article 78. Under *201 subdivision 2 of section 817 of the Executive Law, any local government which appears as a party in any proceeding before the agency shall have standing to have the Adirondack Park Agency decision reviewed pursuant to article 78. In the instant case, the plaintiff, the County of Franklin, was denied party status and therefore would not, on the face of subdivision 2 of section 817, have standing to bring a review under article 78. However, the denial of its right to participate as a party by the decision of Daniel Manning, Esq., the hearing officer, certainly put the plaintiff in the position of an "aggrieved person” within the meaning of subdivision 1 of section 817.
The defendants argue that the court must rely solely on the test enunciated by the Court of Appeals in Matter of Dairylea Co-op. v Walkley (38 NY2d 6). In Dairylea, the Court of Appeals held that where a petitioner cannot challenge an administrative action on the basis of due process grounds, nor on the basis of any specific statutory right, then it must establish both (1) injury in fact and (2) that the interest asserted is arguably within the zone of interest to be protected by the statute.
In this lawsuit, we are dealing with a section of the law, subdivision 1 of section 817 of the Executive Law, which specifically allows an aggrieved person to bring an article 78 review. Clearly, if a person has properly requested full party status and is improperly denied the right to participate as a full party in the hearing, then that person is an "aggrieved person” within the meaning of subdivision 1 of section 817. In the papers on this motion, it is patently established as fact that a timely request for party status was made and that it was denied.
Moreover, the court is convinced that apart from the statutory authority to bring this proceeding, the plaintiff has established both (1) injury in fact and (2) that the interest asserted is within the zone of interest to be protected.
The county has alleged that it will suffer injury in numerous ways by reason of the removal of Troop "B” Headquarters from Malone. The problem is that because it was denied full party status, it was never allowed to fully establish its injury. Nevertheless, the assertions made by the County of Franklin in statements submitted to the Adirondack Park Agency hearing officer are sufficient, in the view of this court, to *202 establish that it could well suffer injury if the relocation is accomplished.
As to the zone-of-interest test, it is the court’s holding that the interest of the County of Franklin comes within the zone to be protected in an Adirondack Park Agency review.
By letter dated October 19, 1977, the Chairman of the Adirondack Park Agency wrote to the Superintendent of the State Police, the Commissioner of the Department of Environmental Conservation and the Executive Deputy Commissioner of the Office of General Services, informing them that, if possible, the Adirondack Park Agency intended "to combine its review with any supplemental SEQRA process.”
Under the Adirondack Park Agency rules and regulations, the Adirondack Park Agency may request that the sponsor shall provide any additional information and data that the agency may deem pertinent, including an environmental impact report (9 NYCRR 581.5). Thus, both by rule and regulation and by actual fact in the instant proceeding, the State Environmental Quality Review Act was made applicable to the Adirondack Park Agency proceeding.
Even more persuasive is the fact that although private Adirondack Park Agency projects under section 809 of the Executive Law are specifically exempted by virtue of ECL 8-0111 (subd 5, par [c]) from the requirement of the preparation of an environmental impact statement under ECL 8-0109, State agency projects pursuant to section 814 of the Executive Law are not exempt from the preparation of an environmental impact statement by any of the State Environmental Quality Review Act provisions of the Environmental Conservation Law. Thus, since the State Environmental Quality Review Act demands examination of the social and economic impact on a community which is losing a facility as well as the new area and the State Environmental Quality Review Act is a part of the Adirondack Park Agency review of a State project, and indeed, in this case was specifically made so, the County of Franklin clearly comes within the zone-of-interest test of the Dairylea case.
The end result is that there is standing to sue pursuant to the Adirondack Park Agency provisions not only because of the statutory authority in subdivision 1 of section 817 but also because the plaintiff here has met all the tests of the Dairylea case that allow a petitioner to sue even apart from any due process requirement or statutory authority.
*203 The defendants next argue that if the court fails to dismiss the complaint, then it should nevertheless dismiss causes of action eight and nine pursuant to CPLR 3211 (subd [a], par 5) as being barred by the Statute of Limitations. Cause of action eight alleges that the Department of Environmental Conservation, the Division of State Police and the Office of General Services failed to make a finding pursuant to ECL 8-0109 (subd 8), which requires a finding to be made that the mandates of 8-0109 have been met and that consistent with social, economic and other essential considerations, from among the reasonable alternatives thereto, the project is one that minimizes or avoids adverse environmental effects to the maximum extent possible. Cause of action nine alleges that the Department of Environmental Conservation, the Division of State Police and the Office of General Services failed to use all practical means to realize the policies and goals set forth in the State Environmental Quality Review Act and to act and choose from among the reasonable alternatives.
The defendants argue that the Division of State Police duly filed its environmental impact statement in July, 1977 and that the superintendent issued the final determination pursuant to ECL 8-0109 (subd 8) on September 6, 1977. Since the action was not commenced until a service of a summons on March 27, 1978, the defendants argue that the four-month Statute of Limitations of CPLR 217 applies, and since the action was not commenced within four months of September 6, 1977, they argue that causes of action eight and nine are barred. The court disagrees with the defendants’ position.
Without question, if anyone sought to bring an article 78 proceeding at the September 6 juncture of the project, any court would of course have held that it was premature. It was not until this project was specifically authorized by a budget certificate dated March 2, 1978, after the Adirondack Park Agency hearing, that there was anything final to bring up for review. And since this lawsuit was commenced on March 27, 1978, well within four months of the final authority to go ahead with the project, causes of action eight and nine are not barred.
Finally, the defendants argue on the motion that causes of action one through six should be dismissed in any event, since they seek relief in the nature of mandamus to compel the performance of discretionary acts. The defendants argue that under section 814 of the Executive Law, the decision of *204 the Adirondack Park Agency to review a State project upon receipt of a proper notice of intent is purely discretionary. But that merely begs the question. The plain facts of the matter are that the Adirondack Park Agency did take jurisdiction of this project, did decide to hold a public hearing, and did make its determination. The real issue is whether or not the State Environmental Quality Review Act provisions and the Adirondack Park Agency provisions were complied with in such an illegal manner as to deprive the plaintiff of its rights. Therefore, the court will not dismiss those causes of action.
The next issue confronting the court is whether it should decide this proceeding on the basis of the papers already submitted. The court verily believes that it is proper to treat this motion brought by the defendants as one for summary judgment pursuant to CPLR 3211 (subd [c]). Of prime importance is that the defendants have requested the court to do so and there are no fact questions to be determined only after a lengthy hearing which would prevent summary judgment.
The court is aware that because of CPLR 7804 (subd [f]), summary judgment in an article 78 proceeding is generally denied where, as in the instant lawsuit, the defendants (or more properly the respondents, since the court has converted the action to an article 78 proceeding) have not as yet filed an answer (Matter of Tobin v Ford, 49 AD2d 83).
In the court’s opinion, Tobin is distinguishable because here the defendants requested that the motion be treated as one for summary judgment pursuant to CPLR 3211 (subd [c]) and because there are no fact questions to be determined (see Matter of Bayswater Health Related Facility v New York State Dept, of Health, 57 AD2d 996).
On the first cause of action, the court will grant so much of the relief requested as directs the Adirondack Park Agency to hold a rehearing and directs the Division of State Police to file a proper notice of intent. The order submitted on this decision should clearly state that the matter is being remanded for a rehearing. The court notes that it is impossible at this point to submit a timely notice of intent. However, it is clear that when a notice of intent is received by the Adirondack Park Agency and it requests additional information, the submitting agency must file that information (9 NYCRR 587.1). By letter dated April 28, 1977, Mr. Glennon of the Adirondack Park Agency notified Mr. Sirdam, Deputy Superintendent of the State Police, that the notice of intent was incomplete and *205 requested additional information. That request should be complied with fully prior to the commencement of the new Adirondack Park Agency proceeding.
As to the second cause of action, the court grants the plaintiff the relief requested insofar as it demands that the plaintiff be' admitted as a party to the reconvened hearing with all the attendant rights thereof, including, but not limited to, the right to cross-examine witnesses and to present evidence. The court is thoroughly convinced by the foregoing analysis that the County of Franklin should have been allowed to participate in the Adirondack Park Agency hearing as a party of right. Thus, the hearing officer committed reversible arbitrary and capricious error in failing to allow the county to participate with full party status.
To the extent that the rules and regulations (9 NYCRR 587.1) adopted to implement section 814 of the Executive Law (State agency projects) seemingly would deny full party status to the County of Franklin, including the right to cross-examine, such rules and regulations are hereby declared unconstitutional and illegal and beyond legislative intent.
On the third cause of action, the court grants the plaintiff the relief requested and directs the Adirondack Park Agency to issue an order to the defendant Division of State Police and the Office of General Services not to undertake the project for up to 90 days following the commencement of the reconvened hearing. The court notes that this 90-day period is mandated under section 814 of the Executive Law.
As to the fourth cause of action, the court denies the relief requested by the plaintiff. Basically, the plaintiff requests that a proper hearing be held, that the proper information be furnished to the Adirondack Park Agency and the hearing officer and that the Adirondack Park Agency hearing officer be required to make proper findings accompanied by a statement of supporting reasons. In light of the fact that a new hearing has been ordered, it is presumed that the proper information will be furnished giving due consideration to the mandates of this decision, proper findings made and proper reasons given. If, in fact, that is not the case after the reconvened hearing and decision, then, the County of Franklin may again bring an article 78 proceeding challenging the results of the reconvened hearing and decision. The court does note that, in its opinion, the present environmental impact statement prepared by the Office of General Services does not *206 fully and adequately address the social and economic impact of the proposed relocation on the County of Franklin. For further direction as to the environmental impact statement, see the discussion, infra, as to the ninth cause of action.
As to the fifth cause of action, the court again denies the relief requested by the plaintiff. The relief requested is that the Adirondack Park Agency and all voting members consider and familiarize themselves with the hearing record prior to any determination. This, of course, is mandated by the rules and regulations that govern the Adirondack Park Agency (9 NYCRR 587.1 [h]). Thus, again, in light of the fact that a reconvened hearing has been ordered, this cause of action becomes moot until such time as the new hearing is completed and a new determination made. If at that time the Adirondack Park Agency and its voting members fail to properly familiarize themselves with the record, as they obviously failed to do in the first hearings, then the County of Franklin may challenge such lack of proper action in an article 78 proceeding.
The relief requested in causes of action six and seven is similarly denied, since a new hearing has been ordered.
As to the eighth cause of action, the plaintiff is granted the relief requested. It is clear that there was no proper finding made pursuant to ECL 8-0109 (subd 8) by the Division of State Police, by the Department of Environmental Conservation or by the Office of General Services. The defendants contend that such proper finding was made by the Superintendent of State Police on September 6, 1977. That determination is set forth in Exhibit A, attached to the order to show cause by the defendants. A perusal of that one-page document clearly indicates that this was not a proper finding (see 6 NYCRR 617.9 [d]).
As to cause of action nine, the plaintiff is granted the relief requested. The Division of State Police, the Department of Environmental Conservation and the Office of General Services have failed to use all available means to realize the goals set forth in the State Environmental Quality Review Act and to act and choose from among the reasonable alternatives. Thus, these parties should make a concerted effort to amend the environmental impact statement to show that the social and economic impact of the project on the Village of Malone has been considered.
The court also grants the final relief requested in the *207 prayer for judgment, namely, declaring void and annulling, vacating and setting aside the order and agency determination issued by the Adirondack Park Agency authorizing the project and enjoining and staying all the defendants from proceeding with construction until such time as the reconvened hearing is completed and the Adirondack Park Agency makes a proper new determination. The court is of the opinion, because of the conversion of this action to an article 78 proceeding, that an appeal from an order based on this decision may only be taken with permission (CPLR 5701, subd [b], par 1; subd [c]; Matter of Stewart v New York State Liq. Auth., 33 AD2d 637). The order would seem to be clearly nonfinal, and on remittitur, the defendants’ duties seem to remain quasi-judicial and not merely ministerial (Matter of North Amer. Holding Corp. v Murdock, 6 AD2d 596).
If the defendants agree with this court’s opinion, prudence would seem to dictate that permission be sought by direct application to the Appellate Division pursuant to CPLR 5701 (subd [c]).
One final note. The court is convinced, as it also believes that the Attorney-General is, that it was not proper under all of the facts surrounding this proceeding to have the Attorney-General representing all defendants on the arguments before the court on the order to show cause. Clearly, there were conflicts between the Adirondack Park Agency and the Division of State Police and the Office of General Services as the approval of the project wended its way through the labyrinth of bureaucracy that the new frontiers of the State Environmental Quality Review Act and Adirondack Park Agency have bestowed on all of us, including the Division of State Police and the Office of General Services.