OPINION OF THE COURT
Allen Murray Myers, J.
The plaintiffs are tenants in rent-stabilized apartments located at 400 East 56th Street in Manhattan. The defendants are: (1) the sponsors of a proposed offering plan of conversion of the building from its present rental status to co-operative ownership, and (2) the Attorney-General of the State óf New York with whom the proposed offering plan (referred to as a “red herring”) has been filed for review and acceptance pursuant to section 352-e of the General Business Law. This is a motion by defendants to dismiss the complaint for failure to state a cause of action. At the time of the submission of the motion, the filing of the proposed offering plan had not yet been accepted for filing by the Attorney-General.
In an eviction plan, when 35% of the tenants agree to *297 purchase their apartments, the remaining 65% nonpurchasers can be evicted! The nonpurchasing tenants are thus deprived of their right not to be evicted under our rent control and rent stabilization laws prohibiting eviction as long as the controlled or stabilized rent is paid. With an apartment vacancy rate of less than 1 % in New York City, it is virtually impossible for the evicted tenants to find similar accommodations. This drastic result tends to deprive such tenants of a free choice. In similar situations, such tenants have been stampeded into reluctantly purchasing their apartments because they were between Scylla and Charybdis.
It is clear that the statutory scheme seeks to avoid such a result. What the Legislature intended was full disclosure so that the tenants would not be forced to buy blindly into a co-operative apartment corporation.
Section 352-e of the General Business Law provides that the Attorney-General, not later than 30 days after the submission of the filing, shall issue a letter stating that the offering has been filed or in the alternative, a notification in writing indicating deficiencies in the offering statement or prospectus. Section 61 (subd 4, par [b]) of the Code of the Rent Stabilization Association of New York City, Inc., gives a tenant in a rent-stabilized apartment the exclusive right .to purchase his apartment for 90 days after the offering has been accepted for filing. If a tenant fails to exercise his right to purchase, when 35% of the tenants in the offered building have purchased, the nonpurchasing tenant loses his rights under the Code of the Rent Stabilization Association and he faces eviction upon the expiration of his lease.
This action seeks judgment declaring that the plaintiffs have rights of disclosure and of discovery and inspection of the sponsors’ books and records and the physical condition of the offered premises to enable them to verify the representations made in the proposed plan regarding the condition of the offered premises; to discover possible “warehousing” of apartments* and other infractions of article *298 23-A of the General Business Law (Martin Act); and in general, to protect their rights against eviction under the Code of the Rent Stabilization Association.
It is claimed by plaintiffs that disclosure is necessary so that the tenants may furnish the Attorney-General with sufficient facts to make a valid complaint under the Martin Act to persuade the Attorney-General to refuse to accept the proposed plan for filing or to enjoin the sales of cooperative interest in the building and to prevent the sponsors from evicting the plaintiffs from their homes because the plan was illegally consummated. (See Richards v Kaskel, 32 NY2d 524.)
The ultimate relief that plaintiffs seek is a declaratory judgment declaring the plan ineffective and declaring that the tenants may not be evicted. Plaintiffs have cross-moved for a preliminary injunction to restrain the Attorney-General from processing, accepting for filing or otherwise acting in furtherance of consummating the offering plan until a reasonable time after plaintiffs have been given an opportunity to inspect the defendants’ books and records, to inspect the physical premises, to direct the sponsors to allow such inspections and directing the Attorney-General to disclose all information that his investigation has developed, and to investigate and make a finding as to “long term vacancies”.
DOES THE COMPLAINT STATE A CAUSE OF ACTION?
DO THE PLAINTIFFS HAVE STANDING?
Where a pleading is attacked for alleged inadequacy in *299 its statement, the court must decide whether some cognizable form of action known to our law has been stated (Dulberg v Mock, 1 NY2d 54). In reaching such determination, a complaint is liberally construed and is deemed to allege whatever causes of action can be implied from its statements by fair and reasonable intendment (Kain v Larkin, 141 NY 144; Foley v D’Agostino, 21 AD2d 60).
The complaint herein alleges that the sponsors have overstated the true value of the premises; understated the projected operating expenses; misrepresented the condition of the property; refused to allow plaintiffs’ engineers to inspect the premises in violation of a provision of the proposed plan giving prospective subscribers the right to do so; leased vacant apartments to employees of the sponsors who are not bona fide tenants to circumvent the restrictions of subdivision 3 of section 352-eeee of the General Business Law and section 61 of the Code of the Rent Stabilization Association. The complaint alleges further that the Attorney-General has been informed of the above and has refused to investigate or take any action; that the actions of the sponsors are intended to deprive plaintiffs of their statutory and contractual rights to continue as rental tenants; and that the sponsors have made misrepresentations and have offered discriminatory and fraudulent inducements to prospective subscribers in violation of subdivision 5 of section 352-e of the General Business Law.
The allegations of this complaint, although they are not in the prayer for relief, if proven, would entitle plaintiffs to a declaratory judgment that the proposed plan of conversion was procured by fraudulent and illegal means. Since the court may grant any relief warranted by the pleadings and the proof, whether demanded or not, the complaint states a good cause of action.
The plaintiffs have stated a cause of action similar to the one adjudicated in Richards v Kaskel (32 NY2d 524, supra).
Richards v Kaskel (supra) also stands for the proposition that these plaintiffs have standing to challenge the methods used by the sponsors not only on their own behalf, but on behalf of all other tenants similarly situated. (See Tenants’ Class Action, Ann., 73 ALR3d 852, 865, § 6.)
*300 In Richards v Kaskel, the Court of Appeals (Fuld, Ch. J.) held that where the required number of subscribers were obtained through fraud, misrepresentation or stealth, the nonsubscribing tenants were entitled to a declaratory judgment that the plan was not legally consummated. The nonsubscribing tenants could not be evicted and were held to be entitled to leases and protection under the New York City Rent Stabilization Law.
CPLR 3001 provides that this “court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed.” There certainly is a justiciable controversy between the parties. (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C3001:4, p 357.) The plaintiffs are, therefore entitled to a declaratory judgment.
It must be acknowledged that the plaintiffs have used an unusual method of obtaining disclosure. Had they consulted CPLR 3102 (subd [c]) they would have discovered that by motion they could have obtained disclosure before an action was commenced, “to aid in bringing an action”, but disclosure will not be denied to plaintiffs merely because they chose an unusual procedure (provided that they act expeditiously). Without such disclosure, plaintiffs would be seriously handicapped in protecting their rights. Furthermore, the status quo should be maintained for a reasonable period pending the disclosure proceedings. (Wallach v Abrams, NYLJ, June 25, 1980, p 6, col 2.)
The motion of the defendants to dismiss the complaint for failure to state a cause of action is denied; the plaintiffs’ cross motion is decided as follows:
(1) The motion to restrain the Attorney-General from proceeding is denied;
(2) the motion to direct inspection of books and records of defendants (except Robert Abrams) is granted;
(3) the motion to direct an engineer’s inspection is granted;
(4) the motion to direct inspection of leases is granted;
*301 (5) the motion to direct disclosure against the Attorney-General is denied; and
(6) the motion to request the Attorney-General to make certain findings is denied.
After the disclosure proceedings have been completed, the complaint may be amended to seek additional relief. (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C3001:5, p 358.)
It is apparent that the plaintiff tenants are at a tremendous disadvantage in dealing with the sponsoring landlord. The sponsor has all of the relevant information while the tenants have none. While the sponsor, American Invsco Corp. is a sophisticated real estate operator, reported to be the nation’s largest condominium converter (see New York Times, March 18, 1980, pp D-l, D-12) who grossed more than $1 billion in revenues in real estate transactions in Atlanta, Nashville, Cleveland, San Francisco and elsewhere, the tenants are inexperienced laymen. The tenants should be permitted liberal disclosure as soon as the offering plan or prospectus (the “red herring”) has been filed. Full disclosure cannot hurt the sponsors, if they are proceeding honestly. If disclosure should reveal that they are not, then the tenants should have the proof to protect their right not to be evicted from their homes. With proof, they may succeed as have the tenants in Richards v Kaskel (32 NY2d 524, supra). Without the means to obtain proof, the tenants are helpless. This, in my opinion, would tend to deprive them of their homes without due process of law in violation of the Fifth and Fourteenth Amendments of the Federal Constitution and section 6 of article I of the New York State Constitution.
THE ACTION AGAINST THE ATTORNEY-GENERAL
A proceeding under CPLR article 78 is the proper vehicle for a party seeking to compel a public officer to perform a duty required by statute. (Elia Bldg. Co. v New York State Urban Dev. Corp., 54 AD2d 337; Industrial Group Serv. v Cantor, 24 AD2d 1032.) A complaint seeking relief in the nature of mandamus and certiorari, such as the one at issue, should be considered an article 78 proceeding and I *302 shall so consider it. (See County of Franklin v Connelie, 95 Misc 2d 189; Matter of Kovarsky v Housing & Dev. Admin. of City of N. Y., 31 NY2d 184.)
The Attorney-General has an obligation under the law to keep the findings and substance of his investigations confidential (General Business Law, § 352, subd 5). The affidavit of Gerald J. Hurwitz sworn to January 14, 1980, principal attorney in the office of the Attorney-General, at page 20, alleges that, “It is * * * wrong * * * for plaintiffs to allege the Attorney General has taken no action, when, in fact, much action has been taken, merely because plaintiffs do not receive status reports of the Attorney General’s confidential investigations.”
The court must assume that the Attorney-General will carry out his responsibilities under the Martin Act and other statutes, rules and regulations concerning the conversion of residential property from rental status to cooperatives and condominiums. In Matter of Attorney-General of State of N. Y. v Katz (104 Misc 2d 846, 846-847), “the Attorney-General obtained an [ex parte] order pursuant to section 354 of the General Business Law enjoining respondents [sponsors] (1) from further sales of co-operative interests in the premises * * * (2) from transíering title or interest in the premises, (3) from using an amended offering plan for sale of such co-operative interests and (4) tolling the running of the tenants exclusive period to purchase. The order further directed that respondents and various other individuals appear before the court to be examined, and to produce various documents.” As the court stated in that case (supra, p 851 [on a motion by the sponsor to vacate the order and by purchasing tenants to intervene] ), “Intervention is * * * inappropriate * * * in any Martin Act examination (see Fuller v Volk, 351 F2d 323). Intervention might well constitute an infringement on the confidential, discretionary investigation conducted by the Attorney- General. ’ ’
So, in this case, it would be inappropriate for this court to direct the Attorney-General’s method of proceeding or to restrain him in any way. As shown in the last cited case, he has the power to protect the tenants and has exercised *303 that power where necessary. Nothing in the papers before me would indicate that the Attorney-General would not. take similar action in this case were it appropriate. Accordingly, the motion of the Attorney-General to dismiss the complaint against him is granted and the plaintiffs’ cross motion for a preliminary injunction against the Attorney-General is denied.
However, permitting the plaintiffs to have the full disclosure and discovery proceedings they request of the defendants (other than the Attorney-General) would in no way interfere with the Attorney-General’s activities herein. Full disclosure would supplement and be in aid of the Attorney-General’s investigation and processing of the proposed plan. Accordingly, the motion of the defendants (other than the Attorney-General) to dismiss the complaint is denied.
In addition to the above, this court is denying the defendants’ (except Abrams) motion to dismiss the complaint, under CPLR 3211 (subd [d]) authorizing such action where facts are unavailable to an opposing party.

 In the growth and development of co-operative conversions wdthin the City of New York over the past number of years, several practices have developed *298 which have caused the Legislature to impose restrictive provisions on sponsors due to the “serious public emergency characterized by an acute shortage of housing accommodations.” A practice of “warehousing” involves the failure of landlords to rent apartments in order to require subscription agreements from a reduced number of qualified tenant purchasers. In establishing a base for computing the required percentage, all residential apartments in the building are included, except those vacant. Thus, the number of purchasers required to obtain the necessary percentage to declare the plan effective is lowered by the process of “warehousing”. (See General Business Law, § 352-eeee, subd 3, par [a].) Another questionable practice is the installing of a sponsor’s employees, relatives or friends who are not bona fide tenants or purchasers into vacant apartments in order to escape the vacancy classification. Other fraudulent and questionable practices have tainted and rendered ineffective conversion plans. (See Richards v Kaskel, 32 NY2d 524.)