Froessel, J.
Petitioners-respondents herein were, by an ex parte order, directed to appear in court with certain books and papers for examination under the so-called Martin Act (General Business Law, art. 23-A). Said order was thereafter vacated at Special Term, and the Appellate Division by a divided court affirmed. Additional background of this litigation is aptly set forth in the Chief Judge’s opinion.
The power of the Attorney-General under the Martin Act is exceedingly broad. Indeed, as Judge Cardozo said in Matter of Ottinger v. State Civ. Serv. Comm. (240 N. Y. 435, 439), the Attorney-General “ almost upon mere request * * * may have an examination before trial of parties or of witnesses ” in a Martin Act investigation. In People v. Federated Radio Corp. (244 N. Y. 33) we stated (pp. 38-39):
“In a broad sense the term [fraud] includes all deceitful practices contrary to the plain rules of common honesty.
“ The purpose of the law is to prevent all kinds of fraud in connection with the sale of securities and commodities and to defeat all unsubstantial and visionary schemes in relation thereto whereby the public is fraudulently exploited. (Hall v. Geiger-Jones Co., 242 U. S. 539.) The words ‘ fraud ’ and ‘ fraudulent practice ’ in this connection should, therefore, be given a wide meaning so as to include all acts, although not originating in any actual evil design or contrivance to perpetrate fraud or injury upon others, which do by their tendency to deceive or mislead the purchasing public come within the purpose of the law.” (See, also, Matter of Edge Ho Holding Corp., 256 N. Y. 374, 381; Matter of La Belle Creole Int., S. A., v. Attorney-General of State of N. Y., 10 N Y 2d 192, decided herewith.)
In our opinion, there was a sufficient showing for the issuance of the order vacated so as to allow the Attorney-General to inquire “ concerning their [petitioners’] practices, transactions *112 and courses of business relating to the promotion, issuance and distribution of investment advice within and from the State of New York ” (emphasis supplied), as specifically provided in said order. (See General Business Law, §§ 352, 354.)
The corporate petitioner is a stock corporation. It is registered with the Securities and Exchange Commission as an ‘ ‘ investment advisor ’ pursuant to the Federal Investors Advisory Act of 1940 (U. S. Code, tit. 15, § 80b-2). That means ‘ ‘ any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, * * * as to the advisability of investing in, purchasing, or selling securities ” (id., § 80b-2, subd. [11]). (See, also, General Business Law, § 359-eee.)
The corporate petitioner published Darvas’s book, and received compensation by way of a financial profit from every book sold at $4.95. It did more, however, than publish the book. It extensively advertised and conducted a mail-order campaign to high pressure sale of the book “as a useful guide to every individual investor”. In its advertisement it stated: “We think the Darvas method will make more and more profits for you as time goes by. Therefore, we make this additional guarantee: EVEN IF YOU KEEP THE BOOK, YOU ABE FBEE TO BETUBN IT ANY TIME FOB A FULL YEAB AND BECEIVE UNQUESTIONED BEFUND if you are not completely satisfied with your improved investment results. Thus, you are doubly protected—return your free examination voucher today.” (Only italics supplied.) It is claimed that the very title of the book was misleading, for the Chief Securities Accountant of the Securities Bureau of the Attorney-General’s office asserted that it overstated Darvas’s alleged profits by multiplying them 10 times. The individual petitioner, Hazel, is president of the Council and, upon being subpoenaed by the Attorney-General, invoked his privilege against self incrimination.
• The Appellate Division did not agree with all the reasoning of Special Term. It recognized, moreover, that not only the book, but the ‘ ‘ other material, including advertisements published by the Council ”, should be considered along with the publication. As to the book, it stated, when “ fairly considered in its entirety it describes certain methods used in specific transactions, actual or fictional, which turned out successfully for the author” (emphasis supplied).
*113 In our opinion, the courts below have applied to the merely inquisitorial order the measure of proof that would be required at a trial. We should not so narrow the scope of the Attorney-General’s power under article 23-A of the General Business Law.
The order appealed from should be reversed, and the ex parte order reinstated, with costs.