OPINION OF THE COURT
Nathaniel T. Helman, J.
On March 19, 1980, the Attorney-General obtained an order pursuant to section 354 of the General Business Law, enjoin *847 ing respondents (1) from further sales of co-operative interests in the premises 375 Riverside Drive, (2) from transferring title or interest in the premises, (3) from using an amended offering plan for sale of such co-operative interests, and (4) tolling the running of the tenants exclusive period to purchase. The order further directed that respondents and various other individuals appear before the court to be examined, and to produce various documents. Respondents have moved to vacate the order of March 19, 1980 and several tenants who have contracted to purchase apartments in the building have moved to intervene in this proceeding. Both motions will be considered together.
The plan for the conversion of the building to co-operative ownership was submitted to the Attorney-General on July 3, 1979. Under the provisions of section 352-e of the General Business Law the Attorney-General proceeded to review the offering plan and obtained an affidavit from respondents to the effect that the premises did not contain an excessive number of "long-term” vacancies within the provisions of section 352-eeee (subd 3, par [a]) of the General Business Law. On the basis of these representations, the plan was accepted for filing on November 16, 1979. Further examination and investigation, however, revealed that certain practices were engaged in by respondents which reflected on the truthfulness of the allegations contained in the affidavits submitted. Since the period within which the tenants had an exclusive right to purchase their apartment was due to expire, and increasing evidence of alleged fraudulent practices by respondents was disclosed upon further investigation, the Attorney-General applied for an ex parte order of injunction which was granted as above indicated on March 28, 1980.
It is the claim of the respondents that the Attorney-General has taken up the gauntlet of a few disgruntled tenants on the basis of misinformation and factual misrepresentations, and has exerted pressure upon the sponsor to delay the co-operative plan. At the outset it must be observed that section 354 of the General Business Law provides broad discretion in the Attorney-General to initiate proceedings involving offering plans for the sale of securities, and to police fraudulent practices. A long line of cases have affirmed this broad mandate of power arising out of the necessity for protecting citizens from the danger of fraudulent practices, including a right to "such preliminary injunction or stay as may appear *848 to such justice to be proper and expedient” (General Business Law, § 354; Matter of Attorney-General of State of N. Y. [Amer. Research Council—Darvas], 10 NY2d 108).
Much is made by respondents of the fact that the Attorney-General previously defended a CPLR article 78 proceeding instituted by some tenants challenging an administrative determination with respect to this offering plan. However, the CPLR article 78 proceeding was brought simply in criticism of the actions of the administrative body as being without a rational basis. Tenants of the building had challenged as arbitrary and capricious the Attorney-General’s acceptance for filing of the offering plan. The court granted the Attorney-General’s motion to dismiss the petition on the ground that it failed to state a cause of action, noting that "the fact that the Attorney General accepts offering statements under the statutory scheme does not mean he has approved them.” Such a determination would certainly not affect the right of the Attorney-General within the powers granted him under the Martin Act to obtain further information as to untrue statements, or affect his authority to conduct further inquiry where elements of alleged falsity or fraudulent misrepresentation appear.
Under the provisions of section 352-e of the General Business Law it is the sponsor, not the Attorney-General, who is the guarantor of representations in the offering plan upon which prospective purchasers are entitled to rely. (People v Lexington Sixty-First Assoc., 38 NY2d 588.) It has been said that such subpoenas as have been here issued may be found on "mere suspicion” or "justifiable suspicion” and are not required to be based upon probable cause. (Matter of Hirschorn v Attorney-General of State of N. Y., 93 Misc 2d 275.)
I
It is contended by the Attorney-General that the premises contained long-term vacancies when the offering statement was submitted in contravention of the provisions of section 352-eeee of the General Business Law. In the growth and development of co-operative conversions within the City of New York over the past number of years several practices have developed which have caused the Legislature to impose restrictive provisions on sponsors due to the "serious public emergency characterized by an acute shortage of housing accommodations.” A developing practice of "warehousing” *849 involves the failure and refusal of landlords to rent apartments in order to obtain subscription agreements from a reduced number of qualified tenant purchasers. In establishing a base for computing the required percentage, all residential apartments in the building are included excepting those vacant. Thus, the number of purchasers required to obtain the necessary percentage to declare the plan effective is lowered by the process of "warehousing.”
"Long term vacancies” are defined by section 352-eeee (subd 3, par [a]) of the General Business Law as "dwelling units not leased or occupied by bona fide tenants for more than five months prior to the date” of the submission of the plan to the Attorney-General. A further provision defines a vacancy rate in excess of 10% which is double the normal average vacancy rates for the building, as "[ejxcessive”.
One of the elements considered by the Attorney-General in his investigation involved the offer and acceptance needed to create a landlord-tenant relationship. Here he found them to be merely those of licensor-licensee, or master-servant. He determined that occupants of the questionable apartments were either employees of respondents or had long-standing business relationships with one or more of them. As he put it, "some of the occupants have demonstrated no intention to continue residence. Most significantly none of the occupants are paying rent * * * The apartments were primarily occupied in order to escape the vacancy classification.” In his view, the eight apartments involved must be deemed "vacant” within the purview of subdivision 3 of section 352-eeee of the General Business Law. Furthermore, when added to the seven long-term vacancies admitted to by the respondents, a long-term vacancy rate in excess of 10% (approximately 13%) results. This would be twice the normal vacancy rate during the years of 1977 and 1978. Thus, the Attorney-General asserts that the recent statute has been violated.
II
Respondents have challenged the constitutionality of those prohibitions of section 352-eeee (subd 3, par [a]) of the General Business Law which apply to the conversion of premises subject to excessive "long term” vacancies, on the ground that application of those provisions to tenants who occupied premises prior to the date of the enactment of the law would affect retroactively the property rights of the sponsor.
*850 It is to be noted at the outset that the section states'"[t]his act shall take effect immediately and shall be applicable to every conversion plan on file with the State Department of Law pending on such date but not yet declared effective and every conversion plan filed thereafter” (L 1979, ch 432, § 5). The fact is that the conversion plan had already been filed when the statute was enacted, and as already indicated the purpose of the enactment was to prohibit landlords from converting premises where they have engaged in the warehousing of vacant apartments. "Long term” vacancies are defined by using a five-month standard and "excessive” vacancies by using the vacancy rate in excess of 10%. The statute is not rendered unconstitutional merely because it may be retroactive in effect (see Adelman v Adelman, 58 Misc 2d 803), and legislation is not unconstitutional if it operates upon events after its enactment even though antecedents of such events precede the legislation. (Matter of Gato, 276 App Div 651, affd 301 NY 653.)
These were not vested property rights which were being destroyed; rather, by the exercise of its police power the State sought to prohibit "warehousing” in order to avoid evictions of tenants within the framework of the express intent of the Legislature. What the statute did was to condition the privilege of converting premises from rental status to co-operative ownership upon the proper performance by the sponsor of the obligations fixed by the Legislature with respect to vacant apartments.
Several other areas of alleged fraudulent representation were relied upon by the Attorney-General in support of his application for a Martin Act order. As appears from the moving affidavits, it was claimed that one of the principal promoters who controlled acquisition, financing, and management of the conversion, was not named as a principal sponsor. Respondents allegedly failed to disclose in their offering plan the existence of a prior preliminary injunction against Katz, the alleged principal. That injunction arose out of alleged fraudulent practices in an earlier sale of co-operative interests in realty.
Additionally, there was a detailed claim involving alleged harassment of defendants through interruption of essential services, as well as the failure to employ a full-time superintendent and to maintain adequate security. Those charges arose on the basis of the evidence submitted as to the accu *851 racy of respondents disclosure of the information required by statute and regulations. Since the Martin Act has vested the Attorney-General with the power to police the offer and sale of securities, he is presumed to be acting "in good faith and with knowledge of and regard for the principles which govern the relevancy of evidence.” (Matter of Ryan v Lefkowitz, 26 AD2d 604.)
For all of the foregoing reasons respondents’ motion to vacate the prior order of this court dated March 19, 1980 including but not limited to the stays contained in said order, must be denied.
In considering the application of those movants who have sought to intervene in this proceeding, it must be recognized that the Attorney-General is engaged in an investigation, and must be given the personal discretion to decide upon the remedies which he wishes to employ. Under those circumstances private individuals have been denied the right to intervene, since no plenary action has been brought, and the present proceeding is purely one seeking disclosure under section 354 of the General Business Law. It must be recognized that the motion under consideration is to vacate an ex parte order obtained by the Attorney-General in the course of an investigation. Intervention is therefore inappropriate, just as it would be in any Martin Act examination. (See Fuller v Volk, 351 F2d 323.) Intervention might well constitute an infringement on the confidential, discretionary investigation conducted by the Attorney-General. Accordingly, the motion of the attorneys for intervenors for leave to intervene will be denied.