THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
CURTIS KATZ et al., Respondents.

First Department, January 28, 1982

#### APPEARANCES OF COUNSEL

*Kevin R. McConnell* (*Gerald J. Hurwitz,* with him on the
brief; *Robert Abrams, Attorney-General,* attorney), for ap-
pellant.

*Mona D. Shapiro* of counsel (*Edward L. Sadowsky,* with
her on the brief; *Tenzer, Greenblatt, Fallon & Kaplan,*
attorneys), for Curtis Katz and others, respondents.

*Steven M. Hayes* of counsel (*Alan A. Tarzy,* with him on
the brief; *Norwick, Raggio, Jaffe & Kayser,* attorneys), for
Simon Katz and others, respondents.

#### OPINION OF THE COURT

MURPHY, P. J.

In November of 1979, the Attorney-General accepted the
co-operative conversion plan of defendant Thunderbird
Realty Company (the "sponsor"). However, in March of
1980, the Attorney-General obtained an ex parte order
from Justice ASCH, pursuant to section 354 of the General
Business Law. This order enjoined the sponsor from pro-

ceeding with the conversion because the Attorney-General was about to commence an action against it because of its fraudulent filing. By decision dated April 29, 1980, Justice HELMAN refused to vacate the ex parte order (*Matter of Attorney-General of State of N. Y. v Katz,* 104 Misc 2d 846). On July 3, 1980, this court affirmed Justice HELMAN's order without prejudice to a motion to vacate if the Attorney-General failed to proceed expeditiously (77 AD2d 501).

Subsequently, the sponsor and the individual sponsoring defendants again moved to vacate Justice ASCH's ex parte order. On January 20, 1981, Justice HELMAN granted the motion upon certain conditions that need not be elaborated. This court, on April 28, 1981, reversed Justice HELMAN's order and reinstated the ex parte order (81 AD2d 554). In reversing, this court made the following observations (p 555): "In light of the Attorney-General's ongoing and extensive investigation in this matter, this court is of the opinion that it would have been more appropriate for the trial court to consider vacating the stay, if the Attorney-General did not complete its investigation by a fixed date, and then promptly proceed with the plenary action. From all of the papers presented there is reasonable cause to believe that respondents engaged in fraudulent practices in their attempt to convert this rental building to a co-operative. Moreover, the Attorney-General instituted a plenary action pursuant to section 353 of the General Business Law some seven months after the prior order of this court. If the Attorney-General was denied a temporary restraining order and required to proceed with his plenary action, and should the Attorney-General prevail at the plenary action, it could, at best, be a 'Pyrrhic Victory'. At worst, a denial would result in irreparable damage to the occupants of the apartments in this building."

As is evident from the above excerpt, the Attorney-General had commenced this action on February 6, 1981. The action, brought pursuant to section 353 of the General Business Law and subdivision 12 of section 63 of the Executive Law, alleged various acts of wrongdoing on the part of the sponsoring defendants. The amended complaint set forth various acts of illegality and impropriety that

included (i) harassing certain tenants in the building, (ii) allowing excessive long-term vacancies to exist in violation of section 352-eeee (subd 3, par [a]) of the General Business Law, (iii) submitting false documents with the filing, and (iv) failing to disclose all material and relevant elements of the filing. At the time the action was commenced, a second temporary restraining order was obtained. This second temporary restraining order was eventually replaced by a preliminary injunction issued by Justice BLYN on May 1, 1981.

On March 9, 1981, the sponsoring defendants moved to examine the State pursuant to CPLR 3102 (subd [f]). Justice SINCLAIR found "special circumstances" and granted the motion. In his decision, Justice SINCLAIR noted, *inter alia,* that the moving defendants were being harmed by the action and that discovery was necessary to prepare a defense. The present appeal is taken by the Attorney-General from Justice SINCLAIR's order.

Upon appeal, the Attorney-General maintains that the State, the real party in interest (CPLR 1301), is acting in its governmental or protective capacity. He, therefore, contends that the sponsoring defendants are not entitled to disclosure under CPLR 3102 (subd [f]) unless special circumstances are shown. The Attorney-General further argues that the information sought is not subject to disclosure because it is either "attorney's work product" (CPLR 3101, subd [c]) or "material prepared for litigation" (CPLR 3101, subd [d]).

CPLR 3102 (subd [f]) reads as follows: "(f) Action to which state is party. In an action in which the state is properly a party, whether as plaintiff, defendant or otherwise, disclosure by the state shall be available as if the state were a private person, except that it may be obtained only by order of the court in which the action is pending and except further that it may not include interrogatories or requests for admissions."

In *People v Volkswagen of Amer.* (41 AD2d 827, mot for lv to app dsmd 33 NY2d 648), this court found that defendant Volkswagen had not commenced any independent investigation as to the names and addresses in the Attorney-General's possession. In the absence of any "special

circumstances" this court found no reason to grant disclosure with regard to the Attorney-General's work product. This "special circumstances" criterion was carried forward by this court into its determination in *Matter of Rothko* (42 AD2d 558, mot for lv to app dsmd 33 NY2d 822). However, in view of the Court of Appeals decision in *People v Bestline Prods.* (41 NY2d 887), the "special circumstances" criterion would appear to be too restrictive. In its memorandum in *Bestline,* the Court of Appeals stated (p 888): "Had a proper case been made for relief in the nature of true discovery, the scope of relief would normally rest in the discretion of the courts below, the exercise of which this court would not review in the absence of an abuse of discretion as a matter of law." In other words, this court may order such disclosure as is appropriate in this type of "protective" case as long as the disclosure ordered does not constitute an abuse of discretion as a matter of law. Thus, the moving defendants are entitled to examine the State, as if it were a private person, on those matters material and relevant to the defense unless those matters are otherwise protected from disclosure (cf. *Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400, 409; cf. *Kaplan v Kaplan,* 31 NY2d 63, 67).

In determining the scope of disclosure, this court must balance the competing interests of the State and the sponsoring defendants. The Attorney-General must not be unnecessarily delayed in his protection of the State by the imposition of burdensome and extended discovery. On the other hand, the sponsoring defendants must not be unfairly forced to trial without the opportunity to prepare an adequate defense. Since there have been a series of orders prohibiting the sponsor from any further action with regard to the conversion, the State could not be prejudiced by any delay that might arise from disclosure on the movants' part.

Turning to the present case, it is not clear whether the moving defendants need disclosure, and if they do, to what extent it must be ordered. Difficulties arise in this case from the fact that portions of the amended complaint are drafted in rather broad and conclusory terms. Since many of the 18 causes are framed in fraud or sound in fraud, the

circumstances constituting the wrong should have been stated in detail (CPLR 3016, subd [b]). There are other portions of the amended complaint that should have been stated more specifically even though they were not set in the fraud area. To date, the movants have not challenged the sufficiency of the complaint, have not moved for a more definite statement, and have not served a demand for a bill of particulars. At this stage in the proceedings, it is advisable that the movants expeditiously serve a demand for a bill of particulars upon the State. Undoubtedly, the State's bill of particulars would supply most of the information now sought by the movants. As will be developed more fully below, the movants will then be in a position to seek disclosure on such other relevant information not provided in the bill.

In this background, a brief comment will be made upon the 18 causes in the amended complaint. These comments are not meant to be exhaustive or all-inclusive; they are merely made to guide the parties and to show the value of the bill of particulars in this case.

In the first and second causes, an allegation is made that there were many long-term vacancies and many actual vacancies. The Attorney-General should identify the apartments, and, if appropriate, the tenants involved in those vacancies.

In the third, fifth and seventh causes, defendant Katz is charged with being more than the managing agent. He was alleged to be the "main * * * principal active" who caused the sponsor to file false statements. The Attorney-General should state additional details as to why it considers Katz to be the "main * * * principal active". He should also furnish details as to which portions of the filing were incorrect and fraudulent.

No bill of particulars or disclosure is needed for the fourth cause. The movants are fully aware that a judgment had been entered against Katz; this judgment enjoined him from participating in the securities area for a period of a year. Thus, no further information need be supplied by the State.

In the sixth and the eighth through eighteenth causes, the sponsoring defendants are charged with various acts (i)

of harassment and (ii) of dereliction of duty in providing services and in maintaining the building. The bill of particulars should specify the dates of the occurrences and the tenants involved, together with any other pertinent information to limit the issues.

Summarizing, the order appealed from must be reversed because it cannot be determined at this stage whether, and to what extent, disclosure is needed against the State. The movants may renew their motion for disclosure after a demand for a bill of particulars is served upon the State. Upon receipt of the bill, the sponsoring defendants may move for such disclosure as is needed to prepare an adequate defense. The examination will be scheduled for Special Term, Part II, of the Supreme Court, 60 Centre Street. At that time, the Justice presiding will, in the exercise of his discretion, control the disclosure to be had by the sponsoring defendants. The State may choose a person with knowledge of the facts to appear, in the first instance, at that examination. If so advised, the movants may seek to identify any relevant records and seek their production. Prior to that examination, the movants may, of course, seek to examine tenants or other nonparty witnesses whose testimony may be relevant to the issues in this action.

Accordingly, the order of the Supreme Court, New York County (SINCLAIR, J.), entered May 15, 1981, granting the moving defendants leave to examine the Attorney-General, should be reversed, on the law, on the facts, and in the exercise of discretion, the motion should be denied with leave to renew the motion in accordance herewith after a bill of particulars has been received from the Attorney-General, without costs.

KUPFERMAN, SANDLER, CARRO and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on May 15, 1981, unanimously reversed, on the law, on the facts, and in the exercise of discretion, the motion denied with leave to renew the motion in accordance with the opinion of this court filed herein, after a bill of particulars

has been received from the Attorney-General, without costs and without disbursements.